## LAIDLAW *v.* ABRAHAM, Collector.

*(Circuit Court, D. Oregon.* August 18, 1890.)

**1. TONNAGE DUTIES—ACTION TO RECOVER.**

The Act of July 5, 1884, (23 St. 118,) which makes the decision of the commissioner of navigation on the question of refunding a tonnage tax erroneously imposed "final," does not take away the right of action from the person who paid said tax, but the purpose and effect of the act is that such decision shall be "final" in the department, so that the secretary of the treasury shall not be burdened with the duty of reviewing it.

**2. SAME—PLEADING.**

An allegation that a collector "exacted" certain tonnage duties is equivalent to saying they were "ascertained and liquidated" by him, as provided in section 2931, Rev. St.; and an allegation that the grounds of the objection to the collector's decision exacting such duties were specified in the notice to him "clearly and distinctly" is equivalent to saying they were "distinctly and specifically" set forth therein, as required in said section.

**3. SAME—COASTWISE TRADE—FOREIGN VESSEL.**

A vessel belonging in whole or in part to an alien may, under section 4347, Rev. St., pass from one district of the United States to another, with cargo brought from a foreign port, and not "unladen," without thereby becoming liable to a tonnage tax under section 4219, Rev. St.; and merchandise is not "unladen" or "taken" within the meaning of these terms, as used in these sections, unless there is an actual, physical removal of the same from or to the vessel.

*(Syllabus by the Court.)*

At Law. On demurrer to the second amended complaint.

*Mr. John C. Flanders,* for plaintiff.

*Mr. Franklin P. Mays,* for defendant.

DEADY, J. The plaintiff, James Laidlaw, doing business as "James Laidlaw & Co.," brings this action against Hyman Abraham, collector of customs at the port of Portland, in the district of Wallamet, to recover the sum of $793.50, alleged to have been wrongfully exacted by the defendant from the British ship Largo Law, as a tonnage tax.

It appears from the second amended complaint that the Largo Law, on October 5, 1889, entered the port of San Diego, Cal., in the customs district of that name, with a cargo from London, England, consisting partly of cement, which was invoiced and destined for and discharged at said port, except 3,360 barrels of the cement, which were invoiced and destined for Portland, Or., or San Francisco, Cal. That the duty on the whole cargo was paid in good faith to the collector at the port of San Diego, who indorsed on the manifest a statement thereof, and cleared the vessel for Portland, with the cement on board, first taking a bond from the agent of the vessel, conditioned for the delivery of the cement at Portland, where it was unladen for the first time since leaving London.

On arriving here the defendant refused to allow the vessel to enter at the port, and "exacted" from the consignee thereof a tonnage tax of 50 cents a ton on her registered tonnage, amounting to $793.50, which sum the plaintiff, as such consignee, paid to the defendant under protest.

The Largo Law did not take on any cargo at San Diego, or elsewhere in the United States, for delivery at Portland or elsewhere.

That on November 7th, and within 10 days from the "exaction" of said tax, plaintiff gave notice in writing to the defendant of his dissatisfaction with said decision, specifying therein clearly and distinctly the grounds of his objection thereto, and of his intention to appeal to the secretary of the treasury therefrom; and within 30 days from the "exaction" of said tax and the date of said decision the plaintiff took such appeal, which was dismissed on March 11, 1890, when this action was commenced within 90 days thereafter.

The district attorney filed a general demurrer to the complaint, to the effect that it does not state a cause of action, and the court is without jurisdiction.

On the hearing, the point was made that the allegation in the complaint that the notice to the collector was given within 10 days from the "exaction" of the duties is not the equivalent of the language of the statute, (section 2931, Rev. St.,) which provides that it must be given within 10 days from the "ascertainment and liquidation" of the same.

The "exaction" of this tax consists in ascertaining the amount of it and demanding and receiving the same, which necessarily implies the payment thereof.

The "ascertainment and liquidation" of the tax implies the same thing. The term "liquidation," as used in the statute and in the law generally, signifies "to clear up; as, by settlement and payment." Worcest. Dict. "Liquidation."

Another point of the same character was made, to the effect that it is not alleged in the complaint, in the language of the statute, (section 2931, Rev. St.,) that the grounds of the objection to the collector's decision were "distinctly and specifically" set forth in the notice to him, but only that they were "specified therein clearly and distinctly."

Though it is generally better to follow the language of the statute in such cases, the words used are sufficient for the purpose.

Section 3011, Rev. St., gives any person an action to recover money paid to any collector "as duties," not authorized by law, for the purpose of obtaining "possession of merchandise imported for him," provided a protest and appeal have been had as prescribed in section 2931.

In *Re Laidlaw*, 42 Fed. Rep. 401, the question whether the Largo Law was liable to the payment of a tonnage tax or duty, on this occasion, was carefully considered by me. The inquiry involved the consideration and construction of sections 2779, 4219, 4347, Rev. St., and the conclusion reached was stated as follows:

"Taking this legislation as a whole, it appears to me that the duties paid at San Diego on the cement destined to Portland were improperly paid, and that the collector should have required the payment of the duties thereon at this port, and that the vessel was not liable for the tonnage tax imposed on it."

Section 4347 permits merchandise brought from a foreign port in a vessel belonging in whole or part to a foreigner, and not "unladen," to

be transported therein from one port of the United States to another; and section 4219 provides:

> "Upon every vessel not of the United States, which shall be entered in one district from another district, having on board * * * merchandise taken in one district, to be delivered in another district, duties shall be paid at the rate of fifty cents per ton."

The mere fact that the duty on this cement was paid or attempted to be paid at San Diego, as a matter of convenience or otherwise, did not amount to an unlading of it there; and, unless it was unladen as a matter of fact, it could not have been taken on there within the purview of section 4219. The "unlading" and "taking" mentioned in the statute is real, physical unlading and taking, and not a constructive or fictitious one.

The only other point made in support of the demurrer is that the decision on the appeal to the secretary was, under the Act of July 5, 1884, (23 St. 118,) in fact made by the commissioner of navigation, and is by said act made final, and is therefore a bar to this action.

This act is entitled "An act to constitute a bureau of navigation in the treasury department." The commissioner created by it is charged, "under the direction of the secretary of the treasury" with many duties concerning "the commercial, marine, and merchant seamen of the United States;" and, by section 3 thereof, "with the supervision of the laws relating to the admeasurement of vessels and the assigning of signal letters thereto, and of designating their official number; and on all questions of interpretation growing out of the execution of the laws relating to these subjects, and relating to the collection of tonnage tax, and to the refund of such tax when collected erroneously or illegally, his decision shall be final."

At first blush it may appear that this provision in the act of 1884 repealed so much of sections 2931, 3011, Rev. St., as gives the person paying such illegal tax the right of redress in the courts, after an unsuccessful appeal to the department.

But, on reflection, I am satisfied that the word "final" is used in this connection with reference to the department, of which the commissioner is generally a subordinate part.

In my judgment, the purpose of the provision is to relieve the head of the department from the labor of reviewing the action of the commissioner in these matters, to side track into the bureau of navigation the business of rating vessels for tonnage duties, and deciding questions arising on appeals from the exaction of the same by collectors.

The appeal is still taken to the secretary of the treasury, as provided in section 2931, but goes to the commissioner for decision, whose action is "final" in the department, as it would not be but for this provision of the statute.

This being so, and nothing appearing to the contrary, it follows that the right of action given to the unsuccessful appellant in such cases is not taken away.

The appeal to the department has simply been decided by the commissioner, rather than the secretary, and, that having been adverse to the plaintiff, his right of action against the collector attaches at once.

And, even if it were plain that congress in the passage of this act intended to deprive the plaintiff of all redress in the courts, might he not in good reason claim that the act is so far unconstitutional and void, as being contrary to the fifth amendment, which declares that no person shall be deprived of his "property without due process of law?"

The demurrer is overruled.