## HENDRICKS v. GONZALEZ.

### (Circuit Court of Appeals, Second Circuit. April 16, 1895.)

#### No. 104.

1. SHIPPING — REFUSAL OF CLEARANCE — INSTRUCTIONS OF SECRETARY OF THE TREASURY.

    It is no justification to a collector of customs, for refusing clearance to a vessel and her cargo, that he acted under instructions from the secretary of the treasury in refusing such clearance, unless such instructions were authorized by law.

2. NEUTRALITY LAWS—REFUSAL OF CLEARANCE—TRANSPORTING MUNITIONS OF WAR.

    It is not enough to justify a collector of customs in refusing clearance to a vessel and her cargo, under Rev. St. § 5290, that it is the purpose of her intended voyage to transport arms and munitions of war for the use of an insurrectionary party in a country with which the United States are at peace.

In error to the Circuit Court of the United States for the Southern District of New York.

This was an action by Francisco Gonzalez against Francis Hendricks, collector of the port of New York, to recover damages for the detention of a vessel of which the plaintiff was the charterer. Judgment was rendered in the circuit court for the plaintiff. Defendant brings error.

Wallace Macfarlane, U. S. Atty., and Charles Duane Baker, Asst. U. S. Atty., for plaintiff in error.

Louis C. Raegener, for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the defendant in the court below to review a judgment for the plaintiff, rendered upon the verdict of a jury. The action was for damages for the detention of a vessel, the steamer South Portland, of which the plaintiff was the charterer, by reason of the refusal of the defendant, who at the time was collector of the port of New York, to grant a clearance. The defense was a justification that the defendant acted in obedience to the instructions of the secretary of the treasury, and rightfully refused a clearance because he had reasonable cause to believe that the vessel was about to engage in a violation of the neutrality laws of the United States. It appeared in evidence that September 9, 1892, the defendant was advised by the secretary of the treasury that the minister of Venezuela had informed the state department that the steamer was to leave New York the next day for Trinidad, with arms for rebels in Venezuela, and had asked that clearance be refused until the matter should be investigated. This advice was accompanied by an instruction from the secretary of the treasury to refuse a clearance pending further investigation. September 10th the plaintiff applied to the defendant for a clearance, and was refused. Pending an investigation which had been instituted by the defendant, and on September 12th, he received further instructions from the secretary of the treasury, as follows: "Case of steamer South Portland will be considered here. You will report as early as practicable." September 13th the defendant forwarded his official report to the secretary of the treasury, informing him of the facts which had come to his knowledge, and transmitting various documents which he had obtained. The report closed with the statement that, so far as the defendant had been able to discover, the vessel was not at that time fitted out as a war vessel. September 17th the defendant was notified by the secretary of the treasury that the secretary of state desired the detention of the steamer to continue until the 19th, and instructed to consult with the department before releasing her. September 21st the defendant received an instruction from the secretary of the treasury that no further action would be taken against the vessel, and to detain her no longer. The next day the clearance was granted, and the vessel was permitted to sail. From September 10th until September 21st, the plaintiff, through his counsel, was endeavoring to procure the release of the vessel by direct communication with the secretary of state, the secretary of the treasury, and the president. The facts brought to the information of the collector in respect to the vessel and the purposes of her voyage were that she was an ordinary merchant steamer, but her cargo consisted wholly of arms and munitions of war; that the charterer was in sympathy with the Venezuelan insurgents; that she was bound for a port near the seat of hostilities; but that she was not at the time manned, or in a state of preparation otherwise, for belligerent operations. Information had also been communicated to him tending to show that the war materials on board the vessel were destined for the ultimate use of the insurgent forces. The trial judge submitted to the jury the question

of fact whether the defendant had reasonable cause to believe from the circumstances that the vessel was intended to be used in committing hostilities against the government of Venezuela, and instructed them that, if he had, he was justified in refusing a clearance and was entitled to a verdict.

Error has been assigned of the refusal of the trial judge to rule that the defendant was exonerated from liability for his acts by his instructions from the secretary of the treasury, and also of the refusal to instruct the jury that, if the defendant had reasonable cause to believe that the vessel was chartered and loaded for the purpose of transporting arms and munitions of war to the insurgents of Venezuela, he was justified in refusing a clearance.

The questions presented by the assignments of error seem to us entirely free from doubt. The plaintiff having complied with the conditions entitling him to clearance by the law of congress (Rev. St. § 4197), it was the duty of the defendant, as collector of the port, to grant a clearance for the vessel and her cargo, unless he was justified in refusing to do so by some other statutory authority. Neither the secretary of the treasury nor the president could nullify the statute, and, though the defendant may have thought himself bound to obey the instructions of the former, his mistaken sense of duty could not justify his refusal of the clearance, and these instructions afforded him no protection unless they were authorized by law. Little v. Bareme, 2 Cranch, 170; Otis v. Bacon, 7 Cranch, 589. It is provided by statute (Rev. St. U. S. § 995) that when a recovery is had in any suit against a collector or other officer of the revenue for any act done by him in the performance of his official duty, and the court certifies that he acted under the directions of the secretary of the treasury, no execution shall issue, but the amount recovered shall be paid from the treasury. It was to provide for a case like the present that this statute was enacted, and the statute would have been wholly unnecessary except that the order of a superior officer is no defense to an inferior for the unlawful performance of an official act.

The neutrality laws of the United States (Rev. St. § 5290) authorize collectors of customs to detain, until the decision of the president is had thereon, "any vessel manifestly built for warlike purposes, and about to depart the United States, the cargo of which principally consists of arms and munitions of war, when the number of men shipped on board, or other circumstances render it probable that such vessel is intended to be employed by the owners to cruise or to commit hostilities upon the subjects, citizens or property of any foreign prince or state, or of any colony, district or people with whom the United States are at peace." The defendant's justification must be found under the authority of this statute, or it cannot be found at all. That it is not found there is almost too plain for argument. The vessel was not "manifestly built for warlike purposes," but was an ordinary merchant steamship. If she had been built for warlike purposes, that fact alone would not have authorized her detention by the collector, because the statute does not permit even such a vessel to be detained unless the number

of men shipped on board or other circumstances render it probable that she is intended to be employed "to cruise or commit hostilities," or, in other words, engage in naval warfare, against the subjects or property of a friendly power. It is not an infraction of international obligation to permit an armed vessel to sail or munitions of war to be sent from a neutral country to a belligerent port, for sale as articles of commerce; and neutrals may lawfully sell at home to a belligerent purchaser, or carry themselves to the belligerents, articles which are contraband of war. It is the right of the other belligerent power to seize and capture such property in transit; but the right of the neutral state to sell and transport, and of the hostile power to seize, are conflicting rights, and neither can impute misconduct to the other. The penalty which affects contraband merchandise is not extended to the vessel which carries it, unless ship and cargo belong to the same owner, or the owner of the ship is privy to the contraband carriage; and ordinarily the punishment of the ship is satisfied by visiting upon her the loss of time, freight, and expenses which she incurs in consequence of her complicity. On the other hand, it is the duty of every government to prevent the fitting out, arming, or equipping of vessels which it has reasonable ground to believe are intended to engage in naval warfare with a power with which it is at peace. These are familiar rules of international obligation, in the light of which the particular statute is to be read. It is intended to prevent the departure from our ports of any vessel intended to carry on war, when the vessel has been specially adapted, wholly or in part, within this jurisdiction, to warlike use. There was not a particle of evidence brought to the attention of the collector tending to show that the vessel was intended to be employed in acts of war. It is not enough that it was the purpose of her intended voyage to transport arms and munitions of war for the use of the insurrectionary party in Venezuela. The Florida, 4 Ben. 452, Fed. Cas. No. 4,887; The Carondelet, 37 Fed. 799; The Conserva, 38 Fed. 431; U. S. v. Trumbull, 48 Fed. 99.

There was no error prejudicial to the defendant in the rulings of the trial judge. Indeed, if, instead of submitting the question of probable cause to the jury, he had ruled, as matter of law, that the evidence did not make out a case of probable cause, we think he would have been justified in doing so. The judgment is affirmed.