## THE AFRICAN PRINCE.

(District Court, D. Massachusetts. March 13, 1914.)

### No. 329.

1. SHIPPING (§ 13*)—CLEARING—FOREIGN SHIPPING—HEALTH AND QUARANTINE REGULATIONS.

Where a steamship after clearing from Yokohama, where it received all proper health and clearance papers, for Boston and New York, put into Kobe, Japan, and thereafter touched at a number of other Asiatic ports, at all of which other ports she received proper health and clearance papers, she did not clear from Kobe for a United States port within Act Feb. 15, 1893, c. 114, § 2, 27 Stat. 450 (U. S. Comp. St. 1901, p. 3313), requiring vessels at any foreign port clearing for any port or place in the United States to obtain a bill of health from the United States Consul or medical officer, and imposing a penalty for clearing and sailing without such bill of health and entering any port of the United States, in view of the old and technical meaning of the word "clearing" as applied to shipping, which had long been recognized and established in the statutes of the United States prior to the act in question.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 26, 27; Dec. Dig. § 13.*].

2. STATUTES (§ 241*)—RULE OF CONSTRUCTION—PENAL STATUTES.

Penal statutes are to be strictly construed, and their language is to be given its usual meaning, unless it is very plain that Congress intended otherwise.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 322, 323; Dec. Dig. § 241.*]

3. SHIPPING (§ 16*)—ACTIONS FOR PENALTIES—AMENDMENT OF INFORMATION.

In a quasi criminal case, by information to recover a penalty for clearing for a port of the United States without a bill of health, where the offense had not in any way endangered health at the United States ports, an amendment of the information after the case had been fully heard would not be allowed.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 30–44; Dec. Dig. § 16.*]

Information to recover a penalty by the United States against the steamship African Prince. Finding for the defendant.

William H. Garland, Asst. U. S. Atty., of Boston, Mass.

Charles R. Hickox and Convers & Kirlin, both of New York City, for claimant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

MORTON, District Judge. This is an information to recover a penalty for an alleged violation of the quarantine laws by the steamship African Prince, in leaving the port of Kobe without having received a bill of health from the United States official there, and subsequently entering the port of Boston in the United States. The statute in question (Act Feb. 15, 1893) provides:

"Sec. 2. That any vessel at any foreign port clearing for any port or place in the United States shall be required to obtain from the consul * * * of the United States at the port of departure, or from the medical officer * * * a bill of health * * * setting forth the sanitary history and condition of said vessel" and various other things.

[1] The facts are as follows: The steamship African Prince having been fumigated and having received all proper health and clearance papers, cleared from the port of Yokohama, Japan, for Boston and New York. After having made one or two calls at Asiatic ports, she put into Kobe, Japan, where she lay about 20 hours. None of the crew went ashore at this port, and nobody came on board except four tally clerks. When the steamer was about to leave, the United States medical officer informed the captain that it would be necessary for the vessel or crew to be fumigated. As this would involve considerable delay and substantial expense, and as the steamer was to touch at various other ports on that coast before taking her departure for the United States, the captain declined to comply with the request, and the United States Consul thereupon refused clearance and health papers. The African Prince is a British steamer, and the captain then went to the British Consul at Kobe, by whom he was given a "Port Clearance," stating that the steamer was bound to Moji, Japan, and that she had conformed to the rules and regulations of the port of Kobe. The steamer also received a proper clearance from the Japanese authorities at the port of Kobe, but did not receive any bill of health from the United States officials at that port. From Moji the steamer proceeded down the coast, stopping several days at Shanghai and at Hong Kong, at each of which places she or her crew were fumigated by the United States medical authorities, and received all proper health and clearance papers. She then proceeded to Cebu, in the Phillipines, and thence to Sabang, Sumatra, from which she departed for the United States. At both of the last-named ports also she received the proper health and clearance papers.

The fundamental question in the case is whether the African Prince "cleared" from Kobe for a port or place in the United States; because if she did not, the act in question does not apply. The government contends that the word "clearing" in the statute means "sailing from" or "leaving" a foreign port, that the words "for the United States" mean setting out with the United States as her ultimate destination, though it may be intended to call at many intermediate foreign ports before reaching the United States, and that as soon as a vessel so sets out, she is bound to take a bill of health from the United States authorities at every port at which she touches. There is a dictum in The Dago, 63 Fed. 182, 11 C. C. A. 117, which supports the government contention, but the point was not necessary for the decision of the case, and, to judge from the record and briefs, which I have ex-

amined, does not seem to have been greatly considered. No other case upon the point has been called to my attention.

The statute in question imposes a penalty upon any vessel "clearing and sailing from any such port without such bill of health and entering any port of the United States." The words "clearance" or "clearing," as applied to vessels leaving port, have a highly technical meaning. The formalities accompanying entry in and departure from a port are part of the police regulations of the sea, as well as of the customs and health service. Chapter 2 of title xlviii, U. S. Revised Statutes, is entitled "Clearance and Entry" (U. S. Comp. St. 1901, pp. 2839–2848), and specifies in considerable detail the duty of the collector to grant a clearance, the conditions under which it shall be granted, the form of clearance, the formalities as to entry, etc. This statute originated in 1799, but "clearances" in the technical sense were in use before that. See Gibbs v. Two Friends, Fed. Cas. No. 5386 (1781); Arnold v. Delcol, Fed. Cas. No. 556 (1794). An action for damages lies against a collector who unlawfully refuses clearance to a vessel. Hendricks v. Gonzalez, 67 Fed. 351, 14 C. C. A. 659; Bas v. Steel, Fed. Cas. No. 1087; Bas v. Steele, Fed. Cas. No. 1088 (1818). The statutory form of clearance (Rev. Stats. 4201) (U. S. Comp. St. 1901, p. 2841) requires the port for which the vessel clears to be stated therein.

[2] The word "clearing" had thus an old and technical meaning as applied to shipping, which had long been recognized and established in the statutes of the United States at the time when it was used by Congress in the act in question. Penal statutes are to be strictly construed, and their language especially is to be given its usual meaning, unless it is very plain that Congress intended otherwise. Standard Oil Case, 221 U. S. at page 59, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734. Taking this statute as a whole, it seems to me that if Congress had intended to put such an onerous and (as the facts of this show) in many cases wholly unnecessary burden on foreign shipping, it would have made its intent clear, and would have used the words "sailing" or "setting out," instead of the word "clearing," which is used in more than one place in the act, and throughout in a manner consistent with its technical and well-understood signification. The African Prince did clear from Kobe, and took a clearance paper stating that she cleared, not for a port in this country, but for Moji, Japan.

[3] Upon all the evidence I find and rule that the African Prince did not clear from Kobe for a port in the United States, and that no offense has been committed. As I regard the offense charged as being at most merely technical, and as not having in any way endangered health at the ports of the United States to which the African Prince was destined and at which she entered, I am not disposed to allow an amendment to the information which was first suggested after the conclusion of the arguments. Undoubtedly power to allow such an amendment exists, but after a quasi criminal case like this has been fully heard, it does not seem to me that an amendment ought to be allowed, except to prevent serious miscarriage of justice.