**BORDER LINE TRANSP. CO. v. HAAS,
Collector of Customs.**

**No. 9829.**

Circuit Court of Appeals, Ninth Circuit.

May 18, 1942.

Lawrence & Tuttle, of San Francisco, Cal. (Frank L. Lawrence, of San Francisco, Cal., of counsel), for appellant.

J. Charles Dennis, U. S. Atty., and Gerald Shucklin, Asst. U. S. Atty., both of Seattle, Wash., for appellee.

Before WILBUR, DENMAN, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

The appellant sued to recover certain entrance and clearance fees paid under protest by it to the Collector of Customs for the District of Washington. The charges were made upon vessels navigating between the port of Seattle and ports on the eastern shore of Vancouver Island, or the mainland of British Columbia south of Powell River. The Collector took the position that 19 U.S.C.A. § 58 controls. This statute has been modified by the statute of 1870, c. 185, § 7, 16 Stat. 178, reducing certain fees, and the statute of 1897, c. 389, § 9, 29 Stat. 689, 46 U.S.C.A. § 330, entirely repealing these fees, for vessels operating in the northwestern frontiers of the United States, "otherwise than by sea". Appellant contends that its operations here involved were within the scope

of these modifications. The District Court held to the contrary and gave judgment for the defendant.

The Treasury Department has consistently ruled since 1897 that the waters of the northwestern frontier, known as Georgia Straits, Straits of Juan de Fuca and Puget Sound, are "sea" within the meaning of the statute which exempts vessels from paying entrance or clearance fees in case they navigate directly between foreign ports and ports on the northwestern frontier, "otherwise than by sea". These waters are all tide waters and are arms of the Pacific Ocean and it is conceded for many purposes are to be classed as part of the sea.

■ In view of the fact that the word "sea" has many different meanings and that its meaning must be ascertained from the context of the statute, it must be admitted that there is an ambiguity involved in determining whether or not the waters traversed by petitioner's ships could properly be characterized as the sea within the meaning of the statute. It undoubtedly is the sea as that term is frequently used to cover not only the ocean but its arms, bays and inlets wherein the tide rises and falls. This ambiguity, however, has been settled by the consistent rulings of the department charged with the responsibility of enforcing the statute. For nearly half a century the Treasury Department has been collecting fees in this area upon the theory that the waters in question were sea within the meaning of the statute. Such departmental construction of the statute is entitled to great weight and should not be upset except for the most cogent reasons. United States v. Hill, 120 U.S. 169, 7 S.Ct. 510, 30 L.Ed. 627; Moore v. Carter Oil Co., 10 Cir., 43 F.2d 322.

Furthermore, until the act of February 14, 1903, c. 552, par. 10, 5 U.S.C.A. § 600, the Treasury Department had the function of determining the rules and regulations concerning collisions at sea occurring within the lines dividing the high seas from inland waters. These functions were transferred by that act to the Department of Commerce.

On August 19, 1890, 26 Stats. 320, Congress enacted an act entitled, "An act to adopt regulations for preventing collisions at sea." It provided that: "The following regulations for preventing collisions at sea shall be followed by all public and private vessels of the United States upon the high seas and in all waters connected therewith, navigable by sea-going vessels: Provided, That such regulations shall not apply to the harbors, rivers and inland waters of the United States, nor to the Great Lakes and their connecting and tributary waters as far east as Montreal, nor to the Red River of the North and rivers emptying into the Gulf of Mexico and their tributaries, in so far as special rules are adopted in pursuance of article 30." 33 U.S.C.A. §. 61.

It will be observed that under this act collisions are "at sea", though they are not on the high seas but are on inland waters. The rules provided by the act of 1890, which are the so-called International Rules, governed both inland waters and the high seas until the adoption of the special rules for inland waters provided for as above.

Later the Treasury, through its Board of Supervising Inspectors to Establish Regulations for Steam Vessels, created the Inland Rules. Later, on June 7, 1897, 30 Stat. 96, 33 U.S.C.A. § 301, Congress declared these to be "special rules" duly made by local authority, referred to in the Act of August 19, 1890. In the preamble to the Act of June 7, 1897, we find that "collisions at sea" include those on "waters of the United States connected with the high seas navigable by sea-going vessels."

The Treasury Department's practice, treating the travel of vessels carrying merchandise on the inland waters between Washington and British Columbia ports as a commerce "by sea", is thus seen to be uniform with the concept of the phrase "at sea", as used in regulating the navigation of the vessels carrying the merchandise on these voyages.

It should be stated that since the argument an elaborate brief has been filed by appellant. In this brief it is contended that the word "sea" as used in the statute under consideration applies to "the open sea" and in support of this contention appellant has cited the legislative history of this act and a number of acts of Congress in which the word "sea" is used in the sense of an open sea or ocean. But if we assume that the word "sea" is the equivalent of "open sea" or "ocean" it is still true that in the case of any particular body of water it still must be determined whether it is or is not sea, open sea or ocean.

And in the case at bar the Treasury Department, through its officers in the Puget Sound area, has been collecting fees upon the theory that the waters between Seattle and Vancouver Island are a part of the sea within the meaning of that term as used in this particular statute (1897). It does not change the situation to insist that the phrase "sea" should be applied only to open sea or ocean and then to argue that the waters in question were neither, for the authorities charged with the execution of the statute have determined that within the meaning of the act of 1897 the waters in question were "sea".

We find no reason for departing from this uniform construction by the Treasury Department. We, therefore, hold in accordance with the departmental construction of the statute that the appellant's ships navigating between ports on Puget Sound and ports on the eastern and southern shores of Vancouver Island and western shore of the British Columbia mainland traverse the sea and are, therefore, not exempted from the payment of entrance and clearance fees by the statute of 1897, supra, which exempts vessels navigating otherwise than by sea from the payment of clearance and entrance fees.

Judgment affirmed.