## BRYAN v. UNION OIL CO. OF CALIFORNIA.

No. 10931.

Circuit Court of Appeals, Ninth Circuit.

May 21, 1946.

John F. Sonnett, Asst. Atty. Gen., Charles H. Carr, U. S. Atty., Ronald Walker and Wm. W. Worthington, Asst. U. S. Attys., all of Los Angeles, Cal., J. Frank Staley, Sp. Asst. to the Atty. Gen., and Leaven-

---

[10] This appears from the stipulation of December 4, 1944.

[11] This, too, appears from the stipulation of December 4, 1944.

worth Colby, Atty., Dept. of Justice, of Washington, D. C., for appellant.

Walter I. Carpeneti, of Los Angeles, Cal., for appellee.

Before GARRECHT, DENMAN and ORR, Circuit Judges.

GARRECHT, Circuit Judge.

The appellee Oil Company sought to recover an alleged overpayment of tonnage taxes assessed upon the company's vessel, the S.S. Montebello, allegedly pursuant to 46 U.S.C.A. § 121.[1] The facts are undisputed and were stipulated, viz.

The Oil Company is the owner and operator of the Montebello. On October 23, 1940, the vessel cleared Los Angeles, loaded with cargo for various ports in South America. After discharging her cargo at those ports she proceeded in ballast to Talara, Peru, where she loaded a cargo of crude petroleum and cleared for Vancouver, British Columbia. After discharging her entire cargo at Vancouver, she proceeded in ballast to Port San Luis, California, arriving at said port December 24, 1940. Upon arrival at San Luis, the Master of the vessel tendered to the Deputy Collector of Customs a Master's Oath showing the Montebello as arriving from Vancouver, B. C., which the Collector refused to accept, demanding an Oath showing the vessel as arriving from Talara, Peru; the Master then complied with the Collector's demand and registered the vessel as arriving from Talara. Upon the entry of the vessel and filing of the Oath, the Collector demanded and collected tonnage at the higher rate of 6 cents per ton,

in the total sum of $306.42. On May 7, 1941, the company applied to the Director of the Bureau of Marine Inspection and Navigation for refund of $204.28, the difference between the tax at six cents per ton as assessed and paid, and the tax of two cents per ton which the company deemed applicable. On May 31, 1941, the director affirmed the tax as assessed and the application for refund was denied.

Three questions were presented to the District Court: (1) Whether the Court has jurisdiction of a controversy involving the assessment and collection of tonnage taxes; (2) Whether the Collector of Customs may be sued for recovery of tonnage taxes illegally or erroneously collected; (3) Whether the tonnage taxes in this case were properly assessed.

The District Court entered judgment for the Union Oil Company, appellee, and the Collector of Customs for the Port of Los Angeles, as Collector and individually, has appealed.

On the question of jurisdiction, there are two cases which deal directly with the interpretation of the tonnage statute: North German Lloyd S.S. Co. v. Hedden, C.C.N.J., 1890, 43 F. 17; and Laidlaw v. Abraham, C.C.Ore., 1890, 43 F. 297, 299. In the Hedden case the question of jurisdiction was neither raised nor briefed by the Government; the court raised and decided the question sua sponte—that in its opinion the court was without jurisdiction. Three months later, in the Laidlaw case, the Circuit Court for the District of Oregon decided that the Act of July 5, 1884, 46 U.S.C.A. § 3,[2] which makes final the deci-

---

[1] Section 121. "Amount of tonnage duties. Upon vessels which shall be entered in the United States from any foreign port or place there shall be paid duties as follows: * *. *

"A tonnage duty of 2 cents per ton, not to exceed in the aggregate 10 cents per ton in any one year, is imposed at each entry on all vessels which shall be entered in any port of the United States from any foreign port or place in North America, Central America, the West India Islands, the Bahama Islands, the Bermuda-Islands, or the coast of South America bordering on the Carribbean Sea, or Newfoundland, and a duty of 6 cents per ton, not to exceed 30 cents per ton per annum, is imposed at each entry on all vessels which shall be

entered in any port of the United States from any other foreign port, not, however, to include vessels in distress or not engaged in trade."

[2] "§ 3. Additional duties of commissioner. The Commissioner of Navigation shall be charged with the supervision of the laws relating to the admeasurement of vessels, and the assigning of signal letters thereto, and of designating their official number; and on all questions of interpretation growing out of the execution of the laws relating to these subjects, and relating to the collection of tonnage tax, and to the refund of such tax when collected erroneously or illegally, his decision shall be final. (July 5, 1884, c. 221, § 3, 23 Stat. 119.)"

sion of the Commissioner of Navigation on the question of refunding a tonnage tax erroneously imposed, does not take away the right of action from the person who paid the tax, but the purpose and effect of the act is that such decision shall be "final" in the department, so that the Secretary of the Treasury shall not be burdened with the duty of reviewing it. The Court deliberated and carefully considered the "first blush" impression that the aforesaid Act repealed the taxpayer's right of redress in the courts, but concluded "on reflection, I am satisfied that the word 'final' is used in this connection with reference to the department, of which the commissioner is generally a subordinate part." In fact, the Court there intimated that if the Act were intended by Congress to deprive a taxpayer of all redress in the courts it would be contrary to the Fifth Amendment and unconstitutional.

█ The District Court in the case at bar determined to follow the Laidlaw case. There is no reversible error in this determination. Indeed, it is a logical conclusion. The District Courts have jurisdiction to hear and determine "all cases arising under any law providing for internal revenue, or from revenue from imports or tonnage." 28 U.S.C.A. § 41(5). We are satisfied that this jurisdiction is not challenged by the provision in the Tonnage statute.

█ The next question, whether the Collector of Customs may be sued for recovery of tonnage taxes erroneously assessed and collected, the District Court also decided in the affirmative. The case of De Lima v. Bidwell, 1901, 182 U.S. 1, 21 S.Ct. 743, 45 L.Ed. 1041, decided that an action will lie against the collector to recover erroneously assessed taxes, the Court there stating (182 U.S. page 179, 21 S.Ct. 746, 45 L.Ed. 1041): "The fact that the collector may have deposited the money in the Treasury is no bar to a judgment against him, since Rev. Stat. § 989, [28 U.S.C.A. § 842], provides that, in case of a recovery of any money exacted by him and paid into the Treasury, if the court certifies that there was probable cause for the act done, no execution shall issue against him, but the amount of the judgment shall be paid out of the proper appropriation from the Treasury."

In Border Line Transp. Co. v. Haas, 9 Cir., 128 F.2d 192, an action against a Collector of Customs to recover entrance and clearance fees, this court, recognizing that authority, assumed jurisdiction.

█ Appellant contends that since there was no formal protest the action will not lie for recovery against the Collector. The District Court found that the Master's tendered Oath that the vessel cleared from Vancouver was refused and that the Oath showing the voyage to be from Talara was substituted to appease the Collector. These facts are undisputed in the record. Appellant's contention that the higher tax was paid without objection is inconsistent with these facts. That the Master proffered the first Oath under which the vessel would be subject to the lower tax certainly impels the conclusion that he objected to the higher tax. That the second Oath was ultimately executed and the higher tax paid only after the Collector refused to accept the first Oath is certainly no basis for the contention that there was no protest. Whether such payment under compulsion constitutes a defense to the requirement of protest was decided in the case of De Lima v. Bidwell, 1901, 182 U.S. 1, 21 S.Ct. 743, 45 L.Ed. 1041, supra, upon which the District Court relied.

We believe that the judgment of the lower court for the appellee Oil Company in the amount of $204.28 should be affirmed as the tonnage rates were not properly assessed.

The statute provides that a "tonnage duty of 2 cents per ton" is imposed on "all vessels * * * from any foreign port or place in North America, Central America, the West India Islands, the Bahama Islands, the Bermuda Islands, or the coast of South America bordering on the Caribbean Sea, or Newfoundland" and the "duty of 6 cents per ton" is imposed on all vessels "from any other foreign port."

██ The Montebello entered the port at Vancouver, B. C., discharged its entire cargo and cleared. A vessel enters the United States from that foreign port from which she last clears. 25 Op.Atty.Gen. 157;

The African Prince, D.C., 212 F. 552. The assessment of the 6 cents tonnage rate here was arbitrary and excessive.

Judgment affirmed.

