**PAUL JONES & CO. v. MAYES, Collector, etc.**

(District Court, W. D. Kentucky. January 10, 1920.)

1. **Evidence** ⊜⊐20(1)—**Court judicially knows whisky may contain charcoal from the barrels in which stored.**

    It is matter of common knowledge, and therefore judicially known, that whisky is stored in warehouses in barrels charred on the inside, and that particles of charcoal may drop from the staves into the spirits during the storage, which it is desirable should be removed.

⊜⊐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Statutes** &#9758;**219—Construction of statute by executive officers has great weight, especially in doubtful case.**

The contemporaneous and practical construction made by the officers of government who execute the laws should be given great weight, especially where the question is a very doubtful one.

**3. Statutes** &#9758;**233—Uniform construction of statute defining rectifiers cannot be changed after tax is levied.**

Where Rev. St. § 3244 (Comp. St. § 5971), defining rectifiers, had been uniformly construed by internal revenue officers as not to apply to a wholesale dealer who merely ·filtered substances from whisky before bottling it, that construction could not be changed after adoption of Revenue Act Oct. 3, 1917, § 304 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c), levying an additional tax on whisky treated by rectifiers as so defined.

**4. Internal revenue** &#9758;**12—Filtering whisky by wholesale dealer is not "rectification."**

The filtering of whisky by wholesale dealer to remove therefrom particles of charcoal and other foreign matter in suspension is not "rectification," which subjects him to the tax imposed by Revenue Act Oct. 3, 1917, § 304 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Rectification.]

Action by Paul Jones & Co., a corporation, against T. Scott Mayes, Collector, etc. Judgment for plaintiff.

A. J. Carroll, of Louisville, Ky., for plaintiff.

W. V. Gregory, U. S. Dist. Atty., and S. M. Russell, Asst. U. S. Dist. Atty., both of Louisville, Ky., for defendant.

WALTER EVANS, District Judge. This action grows out of section 304 of the Revenue Act of October 3, 1917 (40 Stat. 310 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c]), which reads as follows:

"Sec. 304. That in addition to· the tax now imposed or imposed by this act on distilled spirits there shall be levied, assessed, collected, and paid a tax of 15 cents on each proof gallon and a proportionate tax at a like rate on all fractional parts of such proof gallon on all distilled spirits or wines hereafter rectified, purified, or refined in such manner, and on all mixtures hereafter produced in such manner, that the person so rectifying, purifying, refining, or mixing the same is a rectifier within the meaning of section thirty-two hundred and forty-four, Revised Statutes, as amended, and on all such articles in the possession of the rectifier on the day this act is passed: Provided, that this tax shall not apply to gin produced by the redistillation of a pure spirit over juniper berries and other aromatics."

Section 3244 of the Revised Statutes (Comp. St. § 5971), so far as applicable, is as follows:

"Every person who rectifies, purifies, or refines distilled spirits or wines by any ·process other than by original and continuous distillation from mash, wort, or wash, through· continuous closed vessel and pipes, until the manufacture thereof is complete, and every wholesale or retail liquor dealer who has in his possession any still or leach tub, or who keeps any other apparatus for the purpose of refining in any manner distilled spirits, and every person who, without rectifying, purifying, or refining distilled spirits, shall, by mixing such spirits, wine or other liquor with any materials, manufacture any spurious, imitation, or compound liquors for sale, under the name of whisky, brandy, gin, rum, wine, spirits, cordials, or wine bitters, or

---

&#9758;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

any other name, shall be regarded as a rectifier, and as being engaged in the business of rectifying: Provided, that any person who rectifies, purifies, refines, or manufactures as aforesaid less than five hundred barrels a year, counting forty gallons of proof spirits to the barrel, shall pay one hundred dollars: And provided, that nothing in this section shall be held to prohibit the purifying or refining of spirits in the course of original and continuous distillation through any material which will not remain incorporated with such spirits when the manufacture thereof is complete."

In February, 1918, the collector of internal revenue of this district notified the plaintiff of the claim made in this case, and a short time subsequently, namely, in April, 1918, a tax on certain distilled spirits belonging to the plaintiff was levied. Later the Commissioner made the assessment. The claim of the government was based upon the proposition that the plaintiff had rectified 13,971.79 gallons of spirits. The tax assessed thereon was $2,095.76. That amount was paid by the plaintiff under protest to the defendant. Plaintiff made application to the Commissioner of Internal Revenue for the refunding of the amount so paid under protest, but its application was denied, and this suit was brought upon the state of facts thus presented, the amount sued for being $2,095.76, with interest thereon from date of its payment to the defendant. There is little real disagreement about the facts; the important question being whether they are sufficient to show that the plaintiff had rectified the spirits upon which the tax was assessed and paid.

We will endeavor later to find the essential facts as fully and accurately as possible. For present purposes, however, it will suffice to state that the plaintiff, a wholesale dealer during 1918, had a license, not only as a wholesale dealer, but also as a rectifier. Of course, under section 304 of the Act of October 3, 1917, the tax thereby laid on rectified spirits is to be paid. That is not disputed. The question here raised is whether the 13,971.79 gallons had been in fact rectified. The whisky in question had been put in bond after distillation, and in due course was afterwards taken out of the bonded warehouse upon the payment of the taxes then due thereon. Subsequently it was removed to the plaintiff's wholesale establishment. While there under those circumstances it was subjected to the treatment which has brought about this litigation; the government claiming that that treatment was rectification, and the claimant contesting that claim. The plaintiff at his wholesale house had long used a Karl Kiefer filter; it providing a better means for filtering whisky than did the old-time hat filter. The latter, as well as the former had been used, by wholesale dealers in their whisky houses for many years, and had been so used without involving a claim by the government that it was rectifying up to a new ruling by the Commissioner of Internal Revenue made some time in 1919. The date of that ruling is left blank in the papers before us presented by the defendant, but it appears to have been about a year after the claim against the plaintiff originated. This Kiefer filter and its predecessor, the hat filter, had previously been freely used by wholesale dealers and by the plaintiff for the purposes presently to be stated, and exactly as it was used in this instance. It is insisted on one side and denied on the other that, though section

3244 was then in force, no claim had been made by the government officials that such use of that filter in the way shown was rectification until after the ruling of the Commissioner in 1919. That ruling, as stated in the brief for the defendant, was as follows:

Distilled Spirits—Rectifier—Wholesale and Retail Liquor Dealers.

Use of Commonly Called "Hat Filter" Without Liability to Tax as a Rectifier Prohibited.

Treasury Department,
Office of Commissioner of Internal Revenue,
Washington, D. C.

To Collectors of Internal Revenue and Others Concerned:

The straining of distilled spirits through cotton, cotton cloth, or any other material, for the purpose of removing therefrom particles of charcoal or any other extraneous matter whatsoever in the liquid, on the premises of a wholesale or retail liquor dealer, without payment by such dealer of special tax as a rectifier of distilled spirits, will not be permitted.

The use of what is commonly known as a "hat filter" by any such dealer without payment of special tax as a rectifier of distilled spirits is hereby prohibited, and all Treasury Decisions or parts of Treasury Decisions in conflict with this ruling are hereby expressly revoked.

Commissioner of Internal Revenue.

Approved          1919.
Secretary of the Treasury.

Under these circumstances the question presented to the court for determination is whether the statutes above copied support the government's contention, as otherwise the plaintiff would be entitled to recover.

The question is an interesting one. It has been ingeniously and ably argued on both sides. Though not inclined to rule against the government in such circumstances, unless it is quite clearly demanded by the authorities, we must nevertheless get at the proper construction of section 3244, because section 304 of the act is based upon section 3244, so far as the definition of the word "rectification" may be concerned. It is this consideration which makes it important to ascertain what the rulings in fact were up to and including the time of the assertion of the right to tax the whisky in question.

The facts to be more fully stated are, first, such as are admitted by the pleading; second, such as are shown by a written stipulation filed; and, third, such as were proved at the trial.

The facts admitted by the answer are those expressly set forth in paragraph 2 of the answer as to the assessment of the taxes claimed, the payment thereof under protest, the appeal to the Commissioner of Internal Revenue for the refunding of the amount paid, and the denial of that appeal. It should, however, be added that, as this is an action at law, the Conformity Act (section 914 of the R. S. U. S. [Comp. Stats. § 1537]) makes the requirement that the pleadings, practice, and mode of procedure under the Kentucky law should be controlling. In view of that situation, it may be that certain denials made in the answer are too vague and general to meet the requirements of section 99, subsection 1, and section 113, subsection 7, of the Civil Code of Practice of Kentucky. For example, there is a denial of "uniformity" of recognition, there is a denial that whisky had

"always" been labeled and duly stamped, and a denial that that was with "full knowledge" of all the government officials. It will be seen that such denials would not meet the requirements of explicitness in practice, because one instance short of uniformity, and one instance where the knowledge was not full, etc., would literally, but hardly adequately, meet the situation under the Kentucky practice. However, it may be that insistence upon these provisions of law in respect to pleadings has been waived by the plaintiff, and that they have thereby become immaterial. Nevertheless the circumstances of such vague and general denials, instead of comprehensive and explicit ones, may be entitled to be considered as of some weight in connection with the uncontradicted testimony at the trial.

Facts agreed upon by a stipulation, which are as follows:

First. The plaintiff is the successor of the firm of Paul Jones & Co., and is the owner of all of the assets of said firm, including the claim sued on herein, and is entitled to maintain this action.

Second. Said firm was authorized to conduct business as a wholesale liquor dealer and rectifier, and had paid to the United States all stamp and license taxes imposed on wholesale liquor dealers and rectifiers which had been assessed against it.

Third. Said firm of Paul Jones & Co. owned and had in its possession and on its premises in Louisville, Ky., what is known as a Karl Kiefer multiple perfection single plate pulp filter.

Fourth. The 13,971.79 gallons of whisky mentioned in the petition was straight whisky taken from a government bonded warehouse in the original barrels in which it had been placed by the distiller, and was removed from said bonded warehouse to the premises of Paul Jones & Co. in Louisville, Ky. Said 13,971.79 gallons of whisky were run through the Karl Kiefer multiple perfection single plate pulp filter mentioned above, directly from the barrels in which it had been originally placed by the distiller; that no other spirits, wine, liquor, materials, or substance of any sort or character were added to said whisky, and all taxes due thereon, except the tax of 15 cents per gallon mentioned in the petition, were paid, and said whisky was labeled and sold as straight whisky.

Fifth. The identical filter used by Paul Jones & Co. for the purpose of straining the whisky above mentioned has been used for many years by practically every distiller in the United States on the distillery premises for the purpose of straining whisky, and such whisky after being run through said filter has been bottled in bond, under the supervision of officers of the United States, as straight whisky, and labeled and sold as such.

Sixth. The tax sought to be recovered herein was paid under protest by Paul Jones & Co., and all necessary procedure was taken, as directed by law, so as to entitle Paul Jones & Co. to recover back said money in case the same should be decided to have been illegally exacted.

Facts proved or otherwise shown at the trial without contradiction are found to be as follows:

(1) That prior to a date in the year 1919 the ruling of the revenue officers had been that the use of the Karl Kiefer filter, as plaintiff used it, was not rectification, and that said ruling was acted upon by plaintiff and other distillers and dealers up to the promulgation in 1919 of the new ruling hereinbefore copied; (2) what we have shown to have been admitted by the pleadings; (3) what we have shown to have been agreed upon by the stipulation filed; and (4) the statements of the witness Samuel C. Miller, who detailed the facts with admitted accuracy as follows:

265 F.—24

"I was a member of the firm of Paul Jones & Co. and am now vice president and general manager of Paul Jones & Co., a corporation, which is the successor of. the firm. I have been actively engaged in the business of wholesale liquor dealer and rectifier for more than 25 years, and in that time I have had a wide experience in the purchase and sale of straight whisky and the rectifying and sale of rectified whisky.

"The 13,971.79 gallons of whisky mentioned in the petition was purchased by Paul Jones & Co., direct from the distiller and was removed from the government bonded warehouse to the premises of Paul Jones & Co. in Louisville, Ky. The whisky was contained in approximately 34 barrels and was all the same whisky. All of said whisky contained in said barrels was strained through a Karl Kiefer filter, and the barrels from which the whisky was emptied were on the floor above that on which the filter was located, and the only pressure was that of gravity from this weight and height. The whisky was run directly from the barrels into the filter, and was bottled directly from the filter when it ran out of same. The whisky flowed through the filter by gravity, and no pressure of any sort was applied to force the whisky through the filter. The sole purpose of straining the whisky through the filter was to remove from the whisky the loose particles of charcoal coming from the inside of the charred barrels in which it was originally placed by the distiller.

"When the whisky came out of the filter and was bottled, it was precisely the same as when it went into the filter, except that the loose particles of charcoal had been removed. The alcoholic contents of the liquor had not been changed; the chemical quality had not been changed; the quantity had not been changed; the proof had not been changed; the flavor had not been changed; the color had not been changed. The whisky was bottled, labeled, and sold as straight whisky with the full knowledge of the government. In case cloudy whisky is run through a Karl Kiefer filter, the filter will not clarify the whisky. At the time the whisky in question was run through the Karl Kiefer filter, Paul Jones & Co. had paid special tax as a wholesaler and rectifier.

"The Karl Kiefer filter is a closed receptacle, and contains about 16 separate filtering surfaces. Each of the filtering surfaces consists simply of a pulp, about one-fourth of an inch in thickness, through which the whisky runs. The density of this pulp could be regulated, and this could not be done in a hat filter. A Karl Kiefer filter and a hat filter will remove any matter in suspension from whisky. The same whisky only runs through one of such filtering surfaces; each of the filtering surfaces being connected with the outlet pipe by a separate tube through which the whisky flows.

"For many years what is known as a hat filter has been used by Paul Jones & Co. and by other wholesale liquor dealers and rectifiers for the purpose of straining whisky. A hat filter consists of a heavy piece of felt, approximately the same as is used in making felt hats, and the felt is made in the shape of a large hat. Whisky is run into this hat, and strains through the felt, so as to remove loose particles of charcoal and other matters in suspense from the whisky. The representatives of the government had never objected to the use of a hat filter, and it was never claimed that the use or possession of such a filter subjected the person using same to the payment of any license or other tax, or to any penalty whatsoever. I do not know whether or not the presence of a Karl Kiefer filter on the premises of a dealer other than a distiller made the dealer liable to tax as a rectifier under the rulings of the department. The hat filter performs precisely the same function as is performed by the Karl Kiefer filter; that is, each of said filtering mediums merely remove from whisky the loose particles of charcoal contained in the whisky, and in no manner change the form or substance of the whisky.

"The only reason for using a Karl Kiefer filter, instead of a hat filter, is because the former is more convenient. A hat filter being uncovered, some of the whisky is apt to overflow and be lost, making constant watching necessary. In addition, a hat filter sometimes gets clogged by the charcoal removed from

the whisky and must be cleaned. A Karl Keifer filter works more rapidly than a hat filter, as it has a number of separate filtering surfaces, each performing the same function as a hat filter, and, having a cover over the top, there is less danger of the whisky overflowing.

"A representative of the government was at all times stationed on the premises of Paul Jones & Co., and all of the acts and transactions of Paul Jones & Co. were done for many years under the direct supervision of a representative of the government.

"When Paul Jones & Co. purchased the 34 barrels of whisky in question from the distiller, a requisition was made upon the government for permission to remove said whisky from the bonded warehouse to the premises of Paul Jones & Co. Said requisition was made by Paul Jones & Co. in their capacity as wholesale liquor dealers, and not as rectifiers, the application having been made on form 92, a copy of which has been filed in the record. When it is the intention to withdraw whisky from a bonded warehouse for the purpose of rectifying same, the requisition is made upon the form also filed in the record, and which shows that the whisky is withdrawn for the purpose of rectification.

"There is marked distinction between straight whisky and rectified whisky. This distinction has been generally and uniformly recognized and understood for many years by all distillers, wholesale and retail liquor dealers, rectifiers, and the public at large.

"Straight whisky, as so generally known and understood, is unmixed spirits, distilled from grain and aged in charred oak barrels, and without having any other spirits, materials, or substances added thereto; that rectified whisky is manufactured or compounded by adding to straight whisky or neutral spirits other materials or substances for the purpose of changing the chemical quality, color, flavor, or quantity of same; that rectified whisky is cheaper than straight whisky, and the margin of profit in the sale of rectified whisky is ordinarily much larger than the margin of profit in the sale of straight whisky."

[1] Furthermore it is matter of common knowledge and therefore judicially known, that when whisky (all the spirits involved herein being whisky) is distilled it is put into barrels to be kept in warehouses. There it may remain for 8 years, largely in order to complete the process of manufacture, but also in order to secure the taxation thereon due to the United States. It may be removed from the warehouse in less time, if the owner elects to remove it upon payment of the taxes thereon. The barrels used, and into which the whisky is put after distillation, are charred on the inside by fire applied to the staves. Particles of the charcoal resulting from this process may, during the long period of warehousing, be separated from the staves, and may drop from them into the spirits. The presence of this charcoal in the whisky in no appreciable way adds to the volume of the spirits, and in no way changes the nature or properties of the whisky. Equally its presence there adds nothing to the value of the merchandise, and only abnormal quantities of the charcoal would diminish that value. Nevertheless, without any abnormality, it is desirable that particles of charcoal, if coming into the spirits, should be removed by the filter used by nearly all wholesale dealers for that purpose. The filtering removes this foreign substance, but in no way changes the nature of the spirits, or imparts to them any other quality whatever. These facts being perfectly well known to the government and its officers, it became, under their supervision and with their knowledge and consent, the custom of many years' standing to construe the process of filtering as in no

way rectification, if the purpose of it was solely that of removing extraneous substances, like charcoal.

This contemporaneous construction of the statute, as evidenced by the almost universal custom thereunder, was continued in force until in 1919, when the new ruling hereinbefore referred to was announced by the Commissioner of Internal Revenue. The fact that this new ruling was made inevitably implies that it was regarded as necessary, in order to change and do away with the previous construction, and doubtless that was the very purpose for which it was promulgated and the change was made. In view of the fact of former conditions and constructions, whereby a rule of law was established in its application to such cases, the authorities about to be cited become of significant importance, especially as the change of construction which had so long been in force was not by legislative consent or enactment, but by executive announcement of its new construction of a statute. These propositions seem to be especially applicable to cases which had arisen previously to the new ruling. Looking at the new act, we find that section 304 referred to section 3244 of the Revised Statutes as the one to control the definition of rectifying and kindred words, and it was under that construction of section 3244 that the practice grew up, and a construction was established which was changed by the Commissioner's ruling in 1919 after the claim in this case had arisen. It might be a most important question to consider whether the status of this claim as fixed by the previous rulings could be changed by the new one, in view of the authorities presently to be referred to.

The defendant's counsel have cited certain cases to support the contention that what had been done to the whisky here was rectification thereof, and we have carefully considered the cases, to see what judicial construction, if any, was made of the words "rectify" and "rectification" as used in the statutes. We have found no cases which could question the view of the Circuit Court of Appeals of the Third Circuit, expressed in Wampole & Co. v. United States, 191 Fed. 576, 112 C. C. A. 636, where it was said:

"The word 'rectifiers' is to receive its legal, and not necessarily its etymological, meaning. Rectification of distilled spirits, in the legal sense, means any process, exclusive of 'original and continuous distillation from mash, wort, or wash, through continuous closed vessels and pipes, until the manufacture thereof is complete,' by which the spirits are separated from the substance with which it is mixed or combined."

And in the same connection the court further said on the same page:

"The rectifier may take the raw spirit of the distiller, and, by repeated processes of distillation, separate the spirit from the oils and impurities left in it by the distiller; or he may take the refuse material of the manufacturer of ginger or vanilla extract, saturated with alcohol, and by distillation separate the spirit from that material. The latter process is that of the defendants in these three cases."

We have carefully examined the Case of Quantity of Distilled Spirits, it being Fed. Cas. No. 11,494, and also the case of United States v. Marshall, which is Case No. 15,726 of the Federal Cases.

But those cases shed very little, if any, light on the pending question, because in each of them the facts were altogether different from those existing here, and in each of them the facts disclosed plainly show a case of rectification.

[2] The same general remarks may apply to several of the cases cited for the plaintiff. However, in one of them, namely, United States v. Twitchell Co. (D. C.) 184 Fed. on page 528, the court stated a proposition which seems to be of much importance, in view of the facts disclosed in this case. It there said:

"A uniform practice by the department, as a result of a construction put upon a doubtful statute, has great weight with the court in construing it, and where the practice has been followed for a long time the court will accept the department's interpretation as the proper one. This defendant is not in any sense engaged as an apothecary, and is not exempt from liability."

Many cases have announced a similar rule, but those we now cite are United States v. Hill, 120 U. S. 169, 7 Sup. Ct. 510, 30 L. Ed. 627, in which the same proposition is much discussed, and near the end of its opinion (120 U. S. on page 183, 7 Sup. Ct. on page 517 [30 L. Ed. 627]), after referring to another opinion in the same volume, the court said:

"A still more recent case on the subject is United States v. Philbrick, ante, 52, where this language is used: 'A contemporaneous construction by the officers upon whom was imposed the duty of executing those statutes is entitled to great weight; and since it is not clear that that construction was erroneous, it ought not now to be overturned.'"

In the Philbrick Case, 120 U. S. 52, 7 Sup. Ct. 413, 30 L. Ed. 559, the court had expressed itself equally explicitly.

Many other similar rulings might be cited, but we need only refer to United States v. Hermanos y Compania, 209 U. S. 339, 28 Sup. Ct. 533 (52 L. Ed. 821), where it was said:

"We have said that, when the meaning of a statute is doubtful, great weight should be given to the construction placed upon it by the department charged with its execution. Robertson v. Downing, 127 U. S. 607; United States v. Healey, 160 U. S. 136. And we have decided that the re-enactment by Congress, without change, of a statute which had previously received long-continued executive construction, is an adoption by Congress of such construction. United States v. Falk, 204 U. S. 143, 152."

The point which seems of great importance is that the contemporary and practical construction made by the officers of the government who executed the laws should be given great weight, especially in cases like this, where the question is a very doubtful one.

[3] It would seem necessarily to follow that all persons directly interested may accept that construction and confidently act upon it. Furthermore, it would seem that this course has been made binding upon the government by the action of its own executive officers. In this case the practice was well known and long continued to construe it as the plaintiff contends, and Congress did not in the act of 1917 change that construction, but expressly provided in section 304 of the act then passed that it referred to section 3244, and left that section in full force as it had been previously construed by the executive

officers. We think this ought to be regarded as binding in this instance as a contemporary interpretation by the executive officers, and we more than doubt the power of the executive officers to change the law as thus stated. Especially should we emphasize this where taxation was imposed under the statute. It may fairly be assumed that Congress intended under these circumstances that the previous construction should be binding upon the officers of the United States. The only attempt to change that, as we have seen, was the ex post facto attempt made in 1919, after the plaintiff had acquired rights under the old construction.

[4] If a few loose particles of a mashed cork were by accident to fall into a quantity of distilled spirits, would the mere removal of those particles of cork from the spirits, either by hand, or by a cup or dipper, or otherwise, be rectification of the spirits thus treated? It in no way changed or affected the chemical or other characteristics of the fluid. It would only remove a certain extraneous and harmless substance, which in no state of case could change the real nature of the spirits. There is no difference between any physical fact involved in the removal of particles of charcoal, as was done here, and the removal of cork in the supposed case. Each process would be the mere elimination of extraneous particles of a substance which could in no way contribute any characteristic to the spirits nor change their nature.

Upon very careful consideration, and in view of the authorities we have cited and of the facts stated and found herein, the court is of opinion that, notwithstanding certain etymological definitions, the practical and contemporaneous construction given and for a long period followed before October 3, 1917, of section 3244, R. S., requires the court to hold, and it is of opinion that it is otherwise also proper to hold, that what was actually done by the plaintiff to the 13,971,79 gallons of whisky described in the plaintiff's petition was not a rectification thereof, nor were those acts a rectifying of it within the meaning of section 304 of the Act of October 3, 1917, nor of section 3244 of the Revised Statutes. The court is also of opinion that the ruling made by the Commissioner of Internal Revenue in 1919 should not, in the absence of other legislation, overrule, in this instance, the construction of the latter section theretofore prevailing. What effect the last-named ruling should have upon transactions subsequent to its being made has not been considered, nor has any opinion thereon been formed.

The result is that a judgment will be entered giving the plaintiff all the relief it has claimed in the petition.