## UNITED STATES *v.* HILL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Argued December 20, 1886. — Decided January 31, 1887.

It was the custom in the United States courts in Massachusetts, from 1839 to December, 1884, known and approved by the judges, for the clerk to charge $3 as fees in naturalization proceedings. The clerk of the District Court never included those fees in his returns. That fact was known to the judges to whom his accounts were semi-annually exhibited, and by whom they were passed without objection in that particular. Relying on that custom, and believing that those fees formed no part of the emoluments to be returned, the clerk of the District Court appointed in 1879 did not include those fees in his accounts. This was known to the district judge when he examined and certified the accounts, and his accounts so made out, to July, 1884, were examined and adjusted by the accounting officers of the Treasury. Under a rule made by the District Court in 1855, the clerk had charged and received the $3 as a gross sum, for examining, in advance of their presentation to the court, the application papers, and reporting to the court whether they were in conformity with law; and had made no division for specific services, according to any items of the fee bill in §§ 823 *et seq.* of the Revised Statutes. In a suit brought in December, 1884, on the official bond of the clerk, against him and his surety, to recover the amount of the naturalization fees; *Held:*

(1) The provision in § 823, taken from § 1 of the act of February 26, 1853, c. 80, 10 Stat. 161, that the fees to clerks "shall be "taxed and allowed," applies, *prima facie,* to taxable fees and costs in ordinary suits between party and party, prosecuted in a court; and there is no specification of naturalization matters in the fees of clerks.

(2) The statute being of doubtful construction as to what fees were to be returned, the interpretation of it by judges, heads of departments, and accounting officers, contemporaneous and continuous, was one on which the obligors in the bond had a right to rely, and, it not being clearly erroneous, it will not now be overturned.

THIS was an action at law to recover from the defendants in error, fees which it was claimed the clerk of the District Court of the United States for the District of Massachusetts should have accounted for, the defendants being the clerk and his bondsman. Judgment for defendants to review which this writ of error was sued out. The case is stated in the opinion of the court.

*Mr. Assistant Attorney General Maury* for plaintiff in error.

*Mr. John Lowell* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

On the 5th of February, 1879, Clement Hugh Hill was duly appointed clerk of the District Court of the United States for the District of Massachusetts, by the judge of that court. On the same day he and William Goodwin Russell and another person executed a joint and several bond to the United States in the penal sum of $20,000, conditioned that Hill, "by himself and by his deputies," should "faithfully discharge the duties of his office, and seasonably record the decrees, judgments, and determinations of the said court, and properly account for all moneys coming into his hands, as required by law." The statute requiring a bond, in force at the time, was § 3 of the act of February 22, 1875; c. 95, 18 Stat. 333, which required the clerk to give a bond, with sureties, "faithfully to discharge the duties of his office, and seasonably to record the decrees, judgments, and determinations of the court of which he is clerk."

This suit was brought by the United States against Hill and Russell on said bond by a writ dated December 4, 1884, claiming $22,000 damages. The declaration alleges, as a breach of the bond, that Hill "has not properly accounted for

all moneys coming into his hands, as required by law, according to the condition of said bond." The answer of the defendants denies that allegation, and avers that Hill "has made full and sufficient returns of all moneys received by him, as required by law, and that he owes no sum of money to the said United States."

The following agreed statement of facts was filed July 1, 1885, signed by the attorneys for the respective parties, and upon it the case was, by written agreement, submitted to the decision of the court:

"The defendant Hill was appointed clerk of said court on the fifth day of February, 1879, and duly qualified as clerk, and the defendants gave the bond, a copy of which is annexed to the declaration. As clerk, he has made half-yearly returns of fees and emoluments received by him, but he has not included in the same the amounts received by him for the naturalization of aliens in the District Court.

"It has been the custom in the United States Courts in the District of Massachusetts, for a long time, not less than forty-five years before the date of the writ in the present action, and known and approved by the judges, for the clerk to charge one dollar as a fee for a declaration of intention to become a citizen, and two dollars as a fee for a final naturalization and certificate thereof; and the clerk of the District Court has never included these in the fees and emoluments returned by him, and this has been known to the judges to whom the accounts have been semi-annually exhibited, and by whom they were passed without objection in this particular. Following this custom, and believing and being informed that these fees formed no part of the emoluments to be returned to the government, the defendant Hill has not included these amounts in his accounts, and this was known to the judge when his accounts were examined, and he made on each a certificate in the form hereto annexed; and his accounts, so made out, up to July 1, 1884, have been examined and adjusted by the accounting officers of the Treasury Department.

"The clerks of the several courts of the state of Massachusetts made similar charges for like services, and made no

returns to the treasurers of the counties of the fees so received until the passage of the statute of the State of 1879, c. 300.

"If, upon the facts before stated and agreed, the court shall be of opinion that the said fees, charged by the defendant Hill, in respect to naturalizations, or any part thereof, should have been returned in his accounts to the United States as part of the emoluments of the clerk, from which his compensation is to be taken, in accordance with § 833 of the Revised Statutes, and that the settlements and adjustments of his several accounts, as above mentioned, constitute no defence to this action, the case shall be sent to an assessor to ascertain the amount due the United States, in accordance with the law as laid down by the court, unless the parties shall, within fifteen days after the announcement of the opinion of the court, agree upon the amount.

"The blanks used for the report of clerks' fees and emoluments, and the blanks used in naturalization of aliens, may be considered as part of the record of the case.

"The instructions of the Department of Justice to the several clerks, dated January, 1879, may be read for any purpose for which they are properly applicable; but neither the defendant Hill nor his deputy, Mr. Bassett, has any recollection of receiving or seeing such a circular before October, 1884.

"The court may draw such inferences from the above facts as a jury might."

Section 833 of the Revised Statutes provides that every clerk of a District Court shall, "on the first days of January and July, in each year, or within thirty days thereafter, make to the Attorney General, in such form as he may prescribe, a written return for the half year ending on said days, respectively, of all the fees and emoluments of his office, of every name and character, and of all the necessary expenses of his office, including necessary clerk hire, together with the vouchers for the payment of the same for such last half year. He shall state separately in such return the fees and emoluments payable under the bankrupt act. . . . Said returns shall be verified by the oath of the officer making them."

Section 839 of the Revised Statutes provides, that "no clerk

of a District Court . . . shall·be allowed by the Attorney General . . . to retain of the fees and emoluments of his office, . . . for his personal compensation, over and above his necessary office expenses, including necessary clerk hire, to be audited and allowed by the proper accounting officers of the Treasury, a sum exceeding three thousand five hundred dollars a year for any such district clerk, . . . or exceeding that rate for any time less than a year."

Section 844 provides, that every clerk shall, "at the time of making his half-yearly return to the Attorney General, pay into the Treasury, or deposit to the credit of the Treasurer, as he may be directed by the Attorney General, any surplus of the fees and emoluments of his office, which said return shows to exist over and above the compensation and allowances authorized by law to be retained by him."

Section 845 provides, that in every case where the return of a clerk " shows that a surplus may exist, the Attorney General shall cause such returns to be carefully examined, and the accounts of disbursements to be regularly audited by the proper officer of his department, and an account to be opened with such officer in proper books to be provided for that purpose."

The foregoing provisions of §§ 833, 839, 844, and 845 were taken from § 3 of the act of February 26, 1853, c. 80, 10 Stat. 165, 166, the supervision being changed from the Secretary of the Interior to the Attorney General by § 15 of the act of June 22, 1870, c. 150, establishing the Department of Justice. 16 Stat. 164.

Section 846 provides, that the accounts of clerks "shall be · examined and certified by the district judge of the district for which they are appointed, before they are presented to the accounting officers of the Treasury Department for settlement. They shall then be subject to revision upon their merits by said accounting officers, as in the case of other public accounts." This provision was taken from § 1 of the act of August 16, 1856, c. 124, 11 Stat. 49.

The blank used for the report of clerks' fees and emoluments, and the oath appended to the report and the certificate

of the judge upon it, were in the following form, as contained in the record:

" [Blank for emolument return, to be filled up when a return is due, and forwarded to the Attorney General of the United States, with the necessary vouchers. Should the return be verified before any officer other than a judge or clerk of a court of the United States, the additional certificate of authentication should be appended, as the printed instructions of July 13, 1870, require. Similar blanks will be furnished for each semi-annual return.]

*Return of fees and emoluments of     , clerk of the      Court of the United States for the      district of     , from     to     , and of moneys paid out by him during the same period for the expenses of his office; also of the receipt or non-receipt of fees and emoluments previously returned by him as "not received."*

|                | Dollars. | Cents. |
|---|---|---|
| **DISTRICT COURT.** | | |
| Fees and emoluments earned from the United States, received | | |
| Do.   do.   do.   do.   not received | | |
| Fees and emoluments earned from individuals, received | | |
| Do.   do.   do.   do.   not received | | |
| Do.   do.   do.   do.   in cases in bankruptcy, received | | |
| Do.   do.   do.   do.   do.   do.   not received | | |
| Total gross emoluments earned in the District Court   $ | | |

| OFFICE EXPENSES PAID OUT OF GROSS EMOLUMENTS, AS AUTHORIZED BY LAW AND REGULATIONS. | District Court. | |
|---|---|---|
| Amount paid for rent of office   Voucher No. 1 | | |
| Do.   do.   furniture for office   do.   2 | | |
| Do.   do.   clerk hire   do.   3 | | |
| Do.   do.   fuel   do.   4 | | |
| Do.   do.   lights   do.   5 | | |
| Do.   do.   stationery   do.   6 | | |
| Total amount of office expenses   $ | | |

| RECAPITULATION. | District Court. | |
|---|---|---|
| Total amount of earnings, received and not received, brought down | | |
| Deduct amount paid for necessary office expenses | | |
| Net amount of emoluments earned | | |
| Deduct maximum personal compensation | | |
| Balance due to the United States   $ | | |
| Fees and emoluments heretofore returned as "not received" for the half year ending on the   day of   , 188 , received | | |
| Fees and emoluments heretofore returned as "not received" for the half year ending on the   day of   , 188 , received | | |
| Fees and emoluments heretofore returned as "not received" for the half year ending on the   day of   , 188 , received | | |
| Fees and emoluments heretofore returned as "not received" for the half year ending on the   day of   , 188 , received | | |

I,        , clerk of the         Court of the United States for
the        district of        , do solemnly swear that the fore-
going account is, in all respects, just and true, according to
my best knowledge and belief; and that I have neither re-
ceived, directly or indirectly, nor directly or indirectly agreed
to receive, or be paid, for my own or another's benefit, any
other money, article, or consideration than therein stated; nor
am I entitled to any emoluments for the period therein men-
tioned other than those therein specified; and that I have
taken all reasonable pains to collect from individuals· amounts
due to the United States for services in my office: So help
me God.

Signed and sworn to before me this      day of     , 188 .

I,        , judge of the         Court for the         district of
, do hereby certify that I have carefully examined the
vouchers referred to in the foregoing return; that the disburse-
ments charged therein for clerk hire and office expenses were
necessary to the convenient transaction of the business of the
clerk's office; and that the sums paid therefor· are, in my
opinion, reasonable.

·-NOTE 1. — No money can be paid from the Treasury to any
clerk while his emolument return shall remain in arrear."

On the foregoing facts and statutes it was contended by the
United States, before the Circuit Court, held by the circuit
judge and the district judge, that the sums received as fees in
naturalization proceedings were " fees and emoluments " within
the meaning of § 833, and ought to have been included
by the clerk in his returns, on the ground that they were re-
ceived for services rendered by the clerk in his official capacity,
and he was, therefore, bound to account for them, whether
they were or were not chargeable under § 828, prescrib-
ing fees for clerks. The Circuit Court held that the action

could not be maintained, and entered a judgment for the defendants, to review which the United States have brought a writ of error.

The opinion of the Circuit Court, which accompanies the record, and is reported in 25 Fed. Rep. 375, gives the following statement as to the former and the existing legislation of Congress on the subject and as to the action of the courts and of the Executive Departments of the government: "By the act of March 3, 1791, 1 Stat. 217, § 1, the compensation of the clerks was fixed at five dollars a day for attending court, and their travel. To this was added by the act of May 8, 1792, 1 Stat. 277, § 3, such fees as were allowed in the Supreme Courts of the state, with a provision that for discharging duties not performed by the clerks of the state courts, and for which the laws of the state made no allowance, the court might allow a reasonable compensation. Under these acts the clerks were allowed to retain all their fees, and were not required to render any account of them to the government. The first law requiring returns to be made was the act of March 3, 1841, 5 Stat. 427. This act established the compensation of clerks of courts at $4500 a year, above clerk hire and office expenses, payable from fees only, and required them to pay the overplus into the public treasury, under such rules and regulations as might be prescribed by the Secretary of the Treasury. The next in order of time was the act of May 18, 1842, 5 Stat. 483. That act required the clerks to make to the Secretary of the Treasury semi-annual returns, embracing all the fees and emoluments of their office, of every name and character, distinguishing those received or payable under the bankrupt act from those received or payable for any other service. It authorized the clerk of the District Court to retain from the fees and emoluments of his office, above office expenses and clerk hire, as his personal compensation, $3500 a year, and required him to pay the surplus into the Treasury. It has been stated that the provision in this act as to bankruptcy fees was inserted to change the law, as ruled by Judge Story, that the clerks were not bound to account for fees earned under the bankrupt act of August 19, 1841.

The act of March 3, 1849, 9 Stat. 395, § 4, establishing the Department of the Interior, transferred the supervision of the accounts of clerks to the Secretary of the Interior. Until the act of February 26, 1853, 10 Stat. 161, the official fees of the clerks remained in substance as fixed by the acts of 1791 and 1792. The act of 1853 was the first uniform statute regulating the fees of the clerks and other officers of the courts throughout the United States. It established the present fee-bill, and is reproduced in §§ 823 to 857 of the Revised Statutes. Its provisions in regard to returns to be made by the clerks were the same as in the act of 1842, except that they were to be made to the Secretary of the Interior, as directed by the act of 1849, instead of to the Secretary of the Treasury. Since the act of June 22, 1870, creating the Department of Justice, the returns have been made to the Attorney General, and supervision of these accounts have been exercised by that officer of the government."

Referring then to the fee-bill of February 26, 1853, as found in §§ 823 *et seq.* of the Revised Statutes, the court proceeds: "Upon an examination of the statute it will be seen that it applies to taxable costs in all ordinary litigation, whether at law or in equity or admiralty, and undoubtedly governs the taxation in all such actions, suits, and proceedings, civil and criminal, *in personam* and *in rem*, in the courts of the United States. But it has not usually been considered, at least in this district, as applying to certain special and peculiar cases, of which the courts have jurisdiction, where only the party asking for the right or privilege is before the court, and from the nature of the case no costs are taxable as in ordinary litigated suits. Of such a character are proceedings under the naturalization laws, under the shipping commissioner's act, and applications to be admitted to practice as an attorney. Thus Judge Shepley early refused to allow the clerk to tax costs by the fee-bill on applications under the shipping commissioner's act of June 7, 1872, 17 Stat. 272, Rev. Stat. § 4544, for the money and effects of deceased seamen deposited in the Circuit Court by the shipping commissioner.

"In respect to naturalization cases, it has never been hitherto understood, either by the judges or the departments, that the fees of the clerk were for services rendered in his official capacity. At times, especially before elections, these applications are extremely numerous. The papers are usually prepared by the parties themselves or their friends, or more frequently by agents of candidates. The hearings are *ex parte*, at no stated times, and it is rare that any person appears in opposition. It has, therefore, been necessary, both in the interest of the applicants, and for the due and orderly execution of the law, and to enable the court to dispose of the cases, that the papers should be looked over and corrected by some person familiar with the law and practice, and in many instances that the witnesses should be examined before the cases were presented to the court for final action. It was for this service that the clerk has been allowed to make these charges to the parties. These are duties which the court has the undoubted right to have performed by some other person than the presiding judge. In these cases the clerk acts rather as a person appointed to assist the court in exercising its functions, like a master or examiner in an equity cause, or an assessor in admiralty, or an auditor in a suit at law. It is the universal practice of all courts of large jurisdiction to appoint special officers, at the expense of the parties, to make inquiries, investigate details, examine papers, take accounts, make computations, and perform ministerial acts. Their reports, when returned into court and accepted, become part of the case, and form the basis of the orders and decrees of the court in the cause.

"It was with this view, to regulate the practice in naturalization cases, and define the duties required of the clerk, that Judge Sprague, in 1855, adopted the following rules, which have ever since been in force:

"'Ordered, by the court, that applications by aliens to be admitted to become citizens of the United States shall be presented to the court while in session, and that proof of the facts whereof the court is required by law to be satisfied, shall be made by at least two credible and disinterested wit-

nesses, who are citizens of the United States, to be produced and examined in open court.

" ' Ordered, that before such applications are presented, all necessary papers shall be filed with the clerk, who shall report to the court, when the application is made, that he has examined the same, and whether they are all in due form and in conformity with the requirements of law, or how otherwise.' "

This fact, as to these rules made in 1855, was not made a part of the agreed statement of facts, but the counsel in the cause, in this court, stipulated in open court, that the fact should be taken as agreed.

The opinion of the Circuit Court then proceeds: " It is for services rendered under these rules, and as a special officer of the court, and not as clerk, that these fees have been permitted. They were not duties pertaining to the office of clerk. They could as well have been performed by any other person designated by the court for the purpose; as by the district attorney, or a commissioner of the Circuit Court, or an attorney, or any suitable person not an officer of the court.

" Reference has been made to the circular of Attorney General Devens of January 14, 1879, issued to the clerks. In it he says, referring to §. 833: ' This language embraces every possible fee or emolument accruing to you by reason of your official capacity, and does not allow the withholding of any. Whatever is done by you that you could not do if out of office has an official color and significance that brings it within the compass of the language of the statute.' This is undoubtedly a forcible and accurate statement of the meaning of the statute. But the naturalization fees do not come within this rule. They did not accrue to the clerk by reason of his official capacity, and were for work which might as well have been done by him when out of office as when in. It is also to be noticed that this circular calls upon the clerks for ' a statement of sums received for searches, for all copies for naturalization papers and oaths, and all other sums received through your office,' but makes no mention in terms of naturalization fees. Register Dept. Justice, 1884, p. 223.

"No complaint of these fees has ever come to the ear of the court from any quarter. On the contrary, this service performed by the clerks has been of great advantage to those seeking to be admitted as citizens. It has had the effect, as originally intended, to simplify the process of becoming a citizen, and to make it more expeditious and inexpensive. It saves the parties the expense of employing an attorney, and the fee charged therefor is much less than would be allowed by the fee-bill, if the application is to be treated and entered on the docket of the court as an ordinary suit. In rejected cases no fee has been charged. This practice has prevailed for more than forty years, ever since the act of 1842, which first required returns, and has been perfectly well known to everybody conversant with the courts. It was begun by Judge Story and Judge Sprague, and has had the approval of all the judges of this district since their day. It has also had the sanction successively of the Department of the Treasury, the Department of the Interior, and the Department of Justice. Until this suit was brought it has never been called in question by any accounting officer of the government; nor has Congress seen fit to put a stop to it by legislation. This construction of the statute in practice, concurred in by all the Departments of the government, and continued for so many years, must be regarded as absolutely conclusive in its effect. *Edwards' Lessee* v. *Darby*, 12 Wheat. 206; *United States* v. *Temple*, 105 U. S. 97; *Ruggles* v. *Illinois*, 108 U. S. 526; *United States* v. *Graham*, 110 U. S. 219.

"It was stated at the bar that a bill was introduced in the last Congress to require the clerks to make returns of all fees which they should receive for naturalizations and as masters and commissioners, but failed to become a law. If a change in the practice should be thought desirable, it is obvious that it should be made by Congress, and not by the courts.

"It is also to be noticed as significant, that the clerks of the courts of Massachusetts, under a fee-bill much like ours, and a statute requiring them to make to the county treasurer yearly a return 'of all fees received by them for their official acts and services,' were never required to include in their returns

the fees received in naturalization cases. Rev. Stat. of 1836, c. 88, § 15 ; Gen. Stat. of 1860, c. 121, § 22. This was changed by the act of 1879, c. 300, which defined what the fees in such cases should be, and directed the clerks to include them in their returns.

"The decision of the court is, that, upon the agreed facts in this case, this action cannot be maintained."

Viewing the whole subject in the light in which it appears on the face of the statute, in regard to the fees of the clerk, we are met by the fact that § 823 of the Revised Statutes, taken from § 1 of the act of February 26, 1853, c. 80, 10 Stat. 161, provides that "the following, and no other, compensation shall be taxed and allowed" to clerks of the District Courts. This applies *prima facie* to taxable fees and costs in ordinary suits between party and party, prosecuted in a court. There is no specification of naturalization matters in the fees of clerks. From as early as December, 1839, the practice set forth in the agreed statement of facts has obtained in the District Court in Massachusetts, of charging the fees of $1 and $2, as gross sums, in naturalization proceedings, without any division for specific services, according to any items of the fee-bill. The act of March 3, 1841, before referred to, the first one on the subject of returns, implied that there should be reports of "fees and emoluments" by the clerk to the Secretary of the Treasury. The act of May 18, 1842, provided for semi-annual returns to that officer, and included, specifically, fees and emoluments under the bankrupt act. But the clerk never has included in these returns his fees and emoluments for naturalization proceedings, and his action from 1842 to and including 1884 has been with the knowledge of the successive district judges, to whom his accounts have been semiannually exhibited. From 1842 to 1849 these accounts went to the Secretary of the Treasury; from 1849 to 1870, to the Secretary of the Interior; and since 1870 they have gone to the Attorney General. From 1856 the statute has required that these accounts, before going forward, "shall be examined and certified by the district judge," and that, after being sent to the several heads of departments, they shall be subject to revis-

ion on their merits by the accounting officers of the Treasury Department. The agreed statement of facts shows that this course has been pursued; that the district judge has examined and certified the accounts, knowing that they did not include naturalization fees ; and that those accounts have been revised on their merits by these accounting officers, for this long series of years, and been examined and adjusted by them with the naturalization fees not included.

With this long practice, amounting to a contemporaneous and continuous construction of the statute, in a case where it is doubtful whether the statute requires a return of the disputed fees, judges of eminence, heads of departments, and accounting officers of the Treasury having concurred in an interpretation in which those concerned have confided, the surety in the present bond, as well as his principal, had a right to rely on that interpretation in giving the bond; and the semiannual accounts of the principal having been actually examined and adjusted at the Treasury, with the naturalization fees excluded, down to and including the one last rendered five months before this suit was brought, a court seeking to administer justice would long hesitate before permitting the United States to go back, and not only as against the clerk, but as against the surety on his bond, reopen what had been settled with such abundant and formal sanction. This principle has been applied, as a wholesome one, for the establishment and enforcement of justice, in many cases in this court, not only between man and man, but between the government and those who deal with it, and put faith in the action of its constituted authorities, judicial, executive, and administrative.

In *Edwards' Lessee* v. *Darby*, 12 Wheat. 206, 210, it was said: " In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect." To the same effect are *United States* v. *Dickson*, 15 Pet. 141, 145; *United States* v. *Gilmore*, 8 Wall. 330; *Smythe* v. *Fiske*, 23 Wall. 374, 382; *United States* v. *Moore*, 95 U. S. 760, 763;

*United States* v. *Pugh,* 99 U. S. 265, 269; *Hahn* v. *United States,* 107 U. S. 402, 406; and *Five per cent. Cases,* 110 U. S. 471, 485. In the case of *Brown* v. *United States,* 113 U. S. 568, the same doctrine was applied, the cases in this court on the subject being collected, and it being said, that a "contemporaneous and uniform interpretation" by executive officers charged with the duty of acting under a statute "is entitled to weight" in its construction, "and in a case of doubt ought to turn the scale." A still more recent case on the subject is *United States* v. *Philbrick, ante,* 52, where this language is used: "A contemporaneous construction by the officers upon whom was imposed the duty of executing those statutes is entitled to great weight; and since it is not clear that that construction was erroneous, it ought not now to be overturned."

*Judgment affirmed.*