SLOUGH et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 9854.

Circuit Court of Appeals, Sixth Circuit.

Feb. 14, 1945.

J. Helen Slough Juergens, of Cleveland, Ohio (Frank M. Slough, of Cleveland, Ohio, on the brief), for petitioners.

Lyle M. Turner, of Washington, D. C., Samuel O. Clark, Jr., Sewall Key, Robert N. Anderson, and Ernest R. Mortenson, all of Washington, D. C., on the brief), for respondent.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The United States Tax Court, three judges dissenting, held that the petitioners, a father and daughter in law partnership, were not entitled to the benefits conferred by the section added to the Revenue Act of 1939 on June 29, 1939, namely, Chapter 247, Title II, Section 220(a), 53 Stat. 878, 26 U.S.C.A. Int.Rev.Code, 107, which provides: "Compensation for Services Rendered for a Period of Five Years or More. In the case of compensation (a) received, for personal services rendered by an individual in his individual capacity, or as a member of a partnership, and covering a period of five calendar years or more from the beginning to the completion of such services, (b) paid (or not less than 95 per centum of which is paid) only on completion of such services, and (c) required to be included in gross income of such individual for any taxable year beginning after December 31, 1938, the tax attributable to such compensation shall not be greater than the aggregate of the taxes attributable to such compensation had it been received in equal portions in each of the years included in such period."

The deficiencies assessed against the taxpayers were for the calendar year 1940. There is no controversy as to the facts. The law firm had rendered to an inventor continuous professional services from January 20, 1934, through September, 1940, upon a contingent contract, by which the inventor was to receive the first $5,000 and thereafter he and his attorneys would divide equally any amount in excess of that sum derived from his patent by sale, assignment, license, or otherwise, or from any reissue of the patent. Pursuant to this contract, after their services had been completed, the attorneys received from the inventor in payment of their fees a total sum of $20,875, whereof $11,500 was received in two payments in October, 1940, and $9,375 was received in January, 1941.

Conceding that the personal services of the law firm covered a period in excess of five calendar years and had been completed before any part of the fee was paid, and that the quoted section of the revenue act for the relief of taxpayers must be construed liberally to accomplish the result intended by Congress, the Tax Court, nevertheless, denied the petitioning attorneys the benefit of the section. It was declared that the "hardship" inherent in the statute was the taxation of the "compensation as an aggregate in one year"; but that this burden imposed upon the taxpayer had been made clear by subsection (c) of the amendatory act which provides, as a condition to the relief accorded, that the compensation must be included in the gross income of the taxpayer for any taxable year beginning after December 31, 1938. It was deemed not enough that the compensation to which the Act of Congress applied should have been received upon completion of the services; but that such compensation also must have been taxable in a single taxable year.

In support of its construction, the Tax Court pointed to the Report of the Senate Finance Committee (Rept. No. 648, 76th Cong., 1st sess.), and to Section 139 of the Revenue Act of 1942, U.S.C.A. Int.Rev. Code, Title 26, Sec. 107,[1] and the Committee Reports relating to the Act.

The Senate Finance Committee Report to which reference was made by the Tax Court pointed out that it had been considered a hardship to tax fully the compensation of writers, inventors and others, who work for long periods of time without pay and then receive their full compensation, upon the completion of their undertakings;

---

[1] Sec. 107. "Compensation for services rendered for a period of thirty-six months or more and back pay. (a) Personal services. If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual."

that, under the law then existing, such persons have their incomes for the whole period aggregated into the final year, resulting in the inequities of charging against the compensation for the full period only the deductions, expenses and credits of the final year, and of subjecting the taxpayer under the graduated surtax to a considerably greater burden; and that, under the proposed amendment, the compensation for personal services rendered over a period of five or more years and paid only on completion of the services would be distributed so that the aggregate tax would be no more than if the income had been received in equal portions in each of the years of the period of service. The report stated, further, that the provisions would be applicable only to cases where the compensation is required to be included in gross income for any taxable year beginning after December 31, 1938.

Section 139 of the Revenue Act of 1942, to which the Tax Court referred in its opinion, amended Section 107 of the Internal Revenue Code in effect in 1939, which is here involved. The Court reasoned that the 1942 Act was intended to liberalize, and not to restrict, the conditions under which relief was granted. But the language of the opinion hardly bears out this interpretation. The Tax Court said: "It [the amendment of 1942] reduced the five-year period; the percentage required to be received or accrued, and thus taxed, in the taxable year; and eliminated 'only on completion of such services.' But the nub of the 'hardship' to be relieved was still the taxing of such compensation as an aggregate in one year. Thus, even under this liberalizing amendment the petitioners would have no standing since the required percentage of the compensation was not received or accrued in the taxable year."

Despite the fact that relief to taxpayers was intended, the Tax Court pointed out that Congress within its power had expressly limited the relief granted to those meeting certain specific conditions, which had not been met by the petitioners for the reason that "one of these conditions was that the taxpayer receive at least 95 percent of the compensation after the completion of the services and be required to return it for Federal income tax purposes in the taxable year."

■ The three dissenting judges found no requirement—nor do we—in Section 107 of the pertinent Internal Revenue Code that the total compensation for the completed work (except up to five percent paid in advance) must be received *in one taxable year*. The dissenting opinion paraphrased the pertinent section, for simplicity, as follows:

"In the case of compensation—

"(a) received for personal services covering a period of five years or more,

"(b) paid (or not less than 95 per cent of which is paid) only on completion of such services, and

"(c) required to be included in gross income for any taxable year beginning after December 31, 1938, the tax attributable to such compensation shall not be greater than the total tax had such compensation been spread ratably over the period during which it was earned."

■ The dissenters found the only requirement concerning the receipt of 95%, or any other percentage, in one year to be contained in subsection (b). The purpose and effect of the provision was considered to be the prevention of the application of the relief provision, where more than five per cent of the compensation has been paid *prior to the completion of the services* for which it was paid. We think this is clearly the reasonable and true construction.

The dissenting judges interpreted the principal purpose of subsection (c) to be the fixation of the first year for which the relief becomes applicable; and that the words in "any taxable year" found in that subsection are not to be read as "any *one* taxable year." It was declared that "the statute ought to be applied just as it is written."

The minority opinion concludes: "The change in the 1942 Act and the legislative history of that act support the view taken in this dissent. That is, the law had to be changed before it included a requirement that a certain percentage of the total compensation for the completed work had to be received in one taxable year. The change shows how clearly Congress could express that requirement when it wanted to, and it shows by comparison that Congress expressed no such requirement in the provision which is applicable here."

We concur in the logical and succinct minority opinion; and would find no necessity for further discussion, except for the argument made in this court by counsel for the Commissioner.

The Commissioner emphasized that, within two months after Section 107 was added to the Code, the Treasury Department issued Regulations 103, Section 19.-107-1 construing the 95% provision to refer to a single taxable year. He cites Supreme Court decisions to the point that in the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law and were appointed to carry its provisions into effect, is entitled to very great respect. Edward's Lessee v. Darby, 12 Wheat. 206, 209, 6 L.Ed. 603; United States v. Hill, 120 U.S. 169, 7 S.Ct. 510, 30 L.Ed. 627; Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796; Helvering v. Reynolds Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536. The Commissioner might also have cited Brewster v. Gage, 280 U.S. 327, 336, 50 S.Ct. 115, 74 L.Ed. 457, and other cases.

■ But it was early held that this rule applies only to cases of ambiguity and doubt. See Swift Co. v. United States, 105 U.S. 691, 695, 26 L.Ed. 1108, and cases there cited. Neither administrative officers nor courts may supply omissions, or enlarge the scope of statutes. Iselin v. United States, 270 U.S. 245, 250, 251, 46 S.Ct. 248, 70 L.Ed. 566. To become binding, interpretative regulations must be in furtherance of the intention of Congress, as evidenced by its Acts; and where the language of a taxing statute is plain and unambiguous, there is no occasion for resort to interpretative regulations of the Treasury Department.

It is true that the Supreme Court has said, as contended by the Commissioner, that provisions granting special tax exemptions are to be strictly construed; that exemptions are allowed only as a matter of legislative grace; and that a taxpayer seeking a deduction must show that he comes within the terms of an applicable statute. Helvering v. Northwest Steel Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29; White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348. But it is also true that the Supreme Court has said that a tax law "is to be construed liberally in favor of the taxpayers to give the relief it was intended to provide" (Bonwit Teller & Co. v. United States, 283 U.S. 258, 263, 51 S.Ct. 395, 397, 75 L.Ed. 1018); and that "if the words [of a tax statute] are doubtful, the

doubt must be resolved against the government and in favor of the taxpayer." United States v. Merriam, 263 U.S. 179, 188, 44 S.Ct. 69, 71, 68 L.Ed. 240, 29 A.L.R. 1547. See to the same effect Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211.

In Colgate-Palmolive-Peet Co. v. United States, 320 U.S. 422, 425, 429, 64 S.Ct. 227, the statement was made that a desire for equality among taxpayers, rather than the reverse, is to be attributed to Congress. There the court was confronted, however, with an ambiguity of phrase which yielded to the intention of Congress as disclosed by legislative history. In United States v. Missouri Pac. R. Co., 278 U.S. 269, 278, 49 S.Ct. 133, 136, 73 L.Ed. 322, the Supreme Court declared: "Where doubts exist and construction is permissible, reports of the committees of Congress and statements by those in charge of the measure, and other like extraneous matter, may be taken into consideration to aid in the ascertainment of the true legislative intent. But where the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed."

■ We adhere to the view that common sense interpretation is the safest rule to follow in the administration of income tax laws. Rhodes v. Commissioner of Internal Revenue, 6 Cir., 100 F.2d 966, 969. All too often the attention of the courts is sought to be diverted from the language of a statute susceptible of easy interpretation to the confusing field of interpretative rules and regulations and legislative history. Resort to such field is, of course, sometimes necessary. But not here; for the language of the statute under consideration is plain and unambiguous. If resort to legislative history had been deemed necessary, however, we think that the interpretation placed upon the statute by the minority of the Tax Court conforms to the intention of Congress as revealed by legislative history in the context.

■ The decision of the Tax Court is reversed and the cause remanded for appropriate proceedings in conformity with this opinion.