**UNITED FRUIT CO. v. HASSETT.**

Civil Action No. 2777.

District Court, D. Massachusetts.

Aug. 2, 1945.

Sam G. Baggett, of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Philip R. Miller, Sp. Assts. to Atty. Gen., for defendant.

SWEENEY, District Judge.

This is an action for the recovery of income taxes for the year 1938 paid by the plaintiff to the defendant on June 16, 1941, together with interest thereon. The question presented is whether, in calculating the proportion of a foreign subsidiary's income tax which a domestic parent corporation may claim as a credit for foreign taxes paid, the dividends received by the parent and the subsidiary's accumulated profits from which they were paid, should include income which was free from foreign taxes. The applicable statutory provisions are found in Section 131 of the Revenue Act of 1938, 52 Stat. 447, 26 U.S.C.A. Int.Rev.Acts page 1068.[1] All of the essential facts have been stipulated.

[1] "Sec. 131. Taxes of foreign countries and possessions of United States.

"(a) Allowance of credit.—If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this title shall be credited with: (1) Citizen and domestic corporation.—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; and * * * (f) Taxes of foreign subsidiary.—For the purposes of this section a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed

The plaintiff, United Fruit Company, the domestic parent, is a New Jersey corporation which owns all of the stock of a British corporation, Elders & Fyffes, Ltd. (hereinafter referred to as the subsidiary). In the year 1938 the foreign subsidiary had a taxable income under the laws of Great Britain of $397,475.09 on which it paid income taxes aggregating $100,931.24. In addition, it derived a profit of $76,476.71 from casual capital gains not included in taxable income under British law.[2] The Bureau of Internal Revenue adjusted the foreign subsidiary's income to a United States income tax basis and determined that the total profits of the foreign subsidiary for 1938 were $434,879.49, including the $76,476.71 of capital gains. After deduction of the income tax paid to Great Britain, $100,931.24, there remained a profit of the foreign subsidiary amounting to $333,948.25.

During 1938 the plaintiff received from its subsidiary dividends aggregating $1,421,500, of which $331,200.03 was determined by the Revenue Agent to have been paid out of the subsidiary's profits of 1938. The remainder of the dividend was determined to have been paid out of profits for the years 1937 and 1919. In 1938 the plaintiff had a total taxable income of $9,270,629.88, including the entire dividend received from the foreign subsidiary. On this basis the plaintiff filed a tax return on June 15, 1939, indicating a total tax liability of $986,641.21 against which a foreign tax credit of $350,678.38 was claimed, reducing its net income tax liability, as shown by the return, to $635,962.83. This sum was paid during 1939.

On June 16, 1941, the Commissioner of Internal Revenue made a deficiency assessment against the plaintiff which resulted in the payment on that date by plaintiff to the defendant of the sum of $20,967.02. Among the items on account of which the assessment was made was an increase of $8,150.17 due to the disallowance of a portion of the credit claimed because of payment of foreign income taxes by plaintiff's subsidiary. The disallowance was due to the exclusion of the $76,476.71 in untaxed foreign profits from the ratios prescribed by statute to determine the fair share of its subsidiary's taxes to which plaintiff was entitled as a credit against dividends received from the subsidiary.

Claim for refund was duly made by the plaintiff and denied by the defendant. This suit involves only the item of $8,150.17 disallowed as credit for foreign taxes paid together with interest thereon.

Section 131 (f) of the Revenue Act of 1938, supra, which authorizes the credit to the parent corporation for foreign taxes paid by the subsidiary from which it received its dividends, sets forth the following method to determine the fair share of

to have paid the same proportion of any income, war-profits, or excess-profits taxes paid by such foreign corporation to any foreign country or to any possession of the United States, upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits: Provided, That the amount of tax deemed to have been paid under this subsection shall in no case exceed the same proportion of the tax against which credit is taken which the amount of such dividends bears to the amount of the entire net income of the domestic corporation in which such dividends are included. The term 'accumulated profits' when used in this subsection in reference to a foreign corporation, means the amount of its gains, profits, or income in excess of the income, war-profits, and excess-profits taxes imposed upon or with respect to such profits or income; and the Commis-

sioner with the approval of the Secretary shall have full power to determine from the accumulated profits of what year or years such dividends were paid; treating dividends paid in the first sixty days of any year as having been paid from the accumulated profits of the preceding year or years (unless to his satisfaction shown otherwise), and in other repects treating dividends as having been paid from the most recently accumulated gains, profits, or earnings. In the case of a foreign corporation, the income, war-profits, and excess-profits taxes of which are determined on the basis of an accounting period of less than one year, the word 'year' as used in this subsection shall be construed to mean such accounting period."

[2] All sums are in terms of American dollars although transposition from English pounds has been necessary in some cases. The parties have stipulated as to the applicable rate of exchange ($4.7383333).

the tax for which the parent may claim credit:

(1) The foreign tax credit which the parent may claim is limited to that proportion of the tax paid by the subsidiary upon its accumulated profits which the dividends received bear to the amount of such accumulated profits. Reducing this restriction to a mathematical formula, the proportion of the foreign tax deemed to have been paid is determined by the following equation:

$$\frac{\text{Dividends received by parent}}{\text{Accumulated profits of subsidiary}} \quad \text{X} \quad \text{Foreign tax paid by subsidiary} \quad = \quad \text{Tax deemed to have been paid by parent}$$

The Supreme Court in American Chicle Co. v. United States, 316 U.S. 450, 62 S.Ct. 1144, 86 L.Ed. 1591, held that the multiplicand in this formula should not be the total tax paid but only that portion of the tax which was paid upon or with respect to the accumulated profits. Since taxes are ordinarily paid on income before taxes, and "accumulated profits" is defined in the statute as income remaining after taxes, the taxes paid on accumulated profits is arrived at by multiplying the total tax paid by a fraction, the numerator of which is the accumulated profits and the denominator of which is the total profits. Inserting this so-called "middle fraction" the formula becomes:

$$\frac{\text{Dividends recived by parent}}{\text{Accumulated profits of subsidiary}} \quad \text{X} \quad \frac{\text{Accumulated profits of subsidiary}}{\text{Total profits of subsidiary}} \quad \text{x} \quad \text{Foreign tax paid by subsidiary} \quad = \quad \text{Tax deemed to have been paid by parent}$$

By canceling the denominator of the first fraction against the numerator of the second fraction the formula may be simplified:

$$\frac{\text{Dividends received by parent}}{\text{Total profits of subsidiary}} \quad \text{X} \quad \text{Foreign Tax paid by subsidiary} \quad = \quad \text{Tax deemed to have been paid by parent}$$

(2) The second limitation imposed by the statute provides that the maximum foreign tax deemed to have been paid by the parent for which credit may be claimed may not exceed that proportion of the parent's total income taxes which its dividends from the foreign subsidiary bears to its total net income from all sources. The formula which results from this limitation may be stated as follows:

$$\frac{\text{Dividends received by parent}}{\text{Entire net income of parent for the year}} \quad \text{x} \quad \text{Total tax of parent for the year before credit} \quad = \quad \text{Maximum tax deemed to have been paid}$$

Both plaintiff and defendant agree as to the formulae stated. The point of departure comes in the interpretation of certain elements in the formulae. The plaintiff maintains that the amounts representing dividends received and the subsidiary's accumulated and total profits may be computed without reference to the question whether untaxed income of the foreign subsidiary is included therein. The defendant contends, however, that, in determining the proportion of the taxes paid upon income abroad which the parent is entitled to claim as a credit, the "dividends" for which tax credit is sought, as well as "subsidiary's accumulated profits" and "subsidiary's total profits" should include only amounts upon which taxes were paid by the subsidiary.

In terms of the first limiting fraction the plaintiff makes the following calculation with reference to income received by the subsidiary in 1938:

$$\frac{331,200.03}{333,948.25} \quad \text{x} \quad \frac{333,948.25}{434,879.49} \quad \text{x} \quad \$100,931.24 \quad = \quad \$76,868.25.$$

The defendant excludes from "dividends received" and also from "accumulated profits" and "total profits" the $76,476.71 which was determined to have been paid out of casual capital gains which had not been subjected to the British income tax. He maintains that "accumulated profits" and "total profits" as used in the statute includes only such profits as were subjected to tax in the foreign country and that hence "dividends received" includes only the portion of the dividends paid out of the profits of the year which were subjected to income tax in Great Britain. The defendant therefore contends that the correct calculation is as follows:

$$\frac{254,723.32}{257,471.54} \times \frac{257,471.54}{358,402.78} \times \$100,931.24 = \$71,733.65$$

The plaintiff's position is that "total profits" as used in the statute means the total amount of the foreign subsidiary's gains, profits on income determined in accordance with the tax laws of the United States and that "accumulated profits" means the total amount of the foreign subsidiary's gains, profits or income, so determined, in excess of the foreign income, war-profits and excess profits taxes imposed upon or with respect to such profits or income. The plaintiff therefore asserts that casual capital gains which would form a part of the taxable income of the foreign subsidiary computed in accordance with the revenue laws of the United States should be included in "total profits" and "accumulated profits" even though such gains were not taxed in Great Britain. In the present case under either interpretation of the first limiting fraction the tax deemed to have been paid would be greater than the maximum credit allowed under the second limiting fraction. The latter formula thus governs the allowable credit in the instant case. However, the question of the inclusion of the casual capital gains in the second limiting fraction rests upon the same considerations involved in the first fraction.

In determining the maximum credit available under the second limitation stipulated in the proviso of Section 131 (f) the defendant again excludes from the numerator of the limiting fraction that part of the dividends determined to have been paid out of casual capital gains which had not been subjected to income tax in Great Britain. Defendant makes the following calculation with regard to the second fraction:

$$\frac{254,723.32}{9,270,629.88^*} \times \$987,977.70^* = \$27,146.05$$

The plaintiff contends that the numerator of this second limiting fraction should be the entire dividend paid out of profits for the year 1938 unreduced by the amount determined to have been paid out of casual capital gains not subjected to income tax in Great Britain. Plaintiff makes this calculation:

$$\frac{331,200.02}{9.270,629.99^*} \times \$987,977.70^* = \$35,296.22$$

* These figures include slight increases over the income tax return originally filed by the plaintiff, representing adjust-

Since the second limiting fraction results in the lower amount, it is the effective maximum applicable here. If plaintiff's contention that $35,296.22 is the proper maximum foreign tax credit is correct, then the plaintiff is entitled to recover $8,150.17 with interest thereon.

Whatever may be the rule with regard to the resolution of doubts in construing the provisions of taxing statutes in general, it seems to have been established that exemptions from taxation, as a matter of legislative grace, must be strictly construed in favor of the taxing authority. They are not to be extended by implication beyond the clear import of the language granting the exemptions. Trotter v. Tennessee, 290 U.S. 354, 356, 54 S.Ct. 138, 78 L.Ed 358; Burroughs Adding Machine Co. v. Terwilliger, 6 Cir., 135 F.2d 608, 610. The plaintiff has urged that the instant case involves primarily, not the construction of the exemption itself, which is granted in Section 131 (a), but the limitations on the exemption in Section 131 (f), and particularly the limitation contained in the proviso of that section. He maintains that a proviso should not be extended to accomplish an objective not clearly within its purpose, or to take a case out of a general enacting clause which does not fall fairly within its terms. United States v. Dickson, 15 Pet. 141, 165, 10 L.Ed. 689; United States v. McElvain, 272 U.S. 633, 639, 47 S.Ct. 219, 71 L.Ed. 451. The Government contends that Section 131 (f) more properly has reference to methods of calculation of the foreign tax credit. Even if the plaintiff's view as to the operation of this section is the correct one, he is not entitled to take advantage of the rule of construction laid down by Mr. Justice Story in United States v. Dickson, supra. The proviso in Section 131 (f) relates to, and limits, the amount of the credit for foreign taxes deemed to have been paid by the parent. If any rule of construction exists in favor of the Government as to the exemption provisions, the same rule may be called upon when the issue relates to the scope of the exemption granted.

However, I am not persuaded that a careful reading of the statutory text itself, or a review of its legislative history compels the acceptance of the construction of

ments made by the Bureau of Internal Revenue.

Section 131 (f) which has been advanced by the defendant, even when aided by the rule of strict interpretation of provisions for exemptions. Of greater import in the solution of the problem at hand is the history of administrative practice, and the successive reenactments by Congress of the provisions of Section 131 (f) after the administrative practice had become crystallized.

The provisions relating to the credit for taxes paid by a foreign subsidiary first appeared in Section 240(c) of the Revenue Act of 1918, 40 Stat. 1081. Section 238 (e) of the Revenue Act of 1921, 42 Stat. 258, contained language substantially similar to that in Section 131 (f) of the Revenue Act of 1938. Until the issuance of Regulations 77 under the Revenue Act of 1932, the regulations for the application of Section 131 (f) were little more than repetitions of the statute. Article 697 of Regulations 77, however, gives detailed instructions with respect to the computation of the tax deemed to have been paid under Section 131 (f). The third example given in Article 697 follows the formula as construed by the plaintiff in computing the foreign tax credit. There is no provision in this example for the exclusion of any part of the income of the French subsidiary which was not subjected to income tax in France. It is conceivable that the example given comprehends only the situation where the taxable income was the same under both United States and French law. However, Article 693 of Regulations 77 requires the domestic corporation claiming the foreign tax credit to support its claim by filing Form 1118. As a note to Item 5, Schedule B, of Form 1118, for 1938 [3] calling for the total profits of the foreign corporation before the deduction for taxes paid, the following instruction was given:

"The amount to be shown as total profits under Item 5 of Schedule B should be the profits from all sources whatsoever (whether or not subjected to foreign tax) from which, after the deduction of the foreign tax shown in Item 7, the dividends may be deemed to have been paid by the foreign corporation."

This serves as a clarification of Example (3) of Regulations 77, and must be taken as administrative approval of the method of computation used by the plain-tiff. The illustrative formulae provided in Regulations 77 have been repeated without material change in Regulations 86 issued under the 1934 Act, Regulations 94 under the 1936 Act, and Regulations 101 under the 1938 Act.

In the interim Congress reenacted the provisions of Section 238(e) of the Revenue Act of 1921 in the Revenue Act of 1932 with certain minor changes which are not relevant here, 26 U.S.C.A. Int.Rev. Acts, page 530. The foreign tax provisions were grouped under Section 131. Successive reenactments were made in the Revenue Acts of 1934, 1936 and 1938.

■ If the full implications of the so-called reenactment rule are adopted, the administrative interpretations have acquired the "force of law" by virtue of the subsequent Congressional action. Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52; Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 116, 59 S.Ct. 423, 83 L.Ed. 536. In this light the administrative construction becomes, as it were, a direct statutory provision. Although the language of the cases cited warrants the literal application of the reenactment rule to the instant case, a more realistic and workable approach to the regulations problem is possible. Under this view the regulations are not made a part of the statute. They retain their interpretative character to provide essential flexibility in tax administration. However, they are to be given great weight in the construction of the statutory provisions which they interpret, particularly where the regulations are issued contemporaneously with the enactment of the statute, and represent a long continued administrative practice. United States v. Hill, 120 U.S. 169, 182, 7 S.Ct. 510, 30 L.Ed. 627; Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796; Smythe v. Fiske, 23 Wall. 374, 382, 23 L. Ed. 47; Robertson v. Downing, 127 U.S. 607, 613, 8 S.Ct. 1328, 32 L.Ed. 269. See, Griswold, A Summary of the Regulations Problem, 54 Harv.L.Rev. 398.

■ Inasmuch as Section 131 (f) appeared substantially in its present form in the Revenue Act of 1921, and Regulations 77 were not issued until 1932, the element of contemporaneousness is not significant here. However, administrative interpreta-

---

[3] The parties have stipulated that that part of Form 1118 relating to taxes paid by a foreign subsidiary has undergone no substantial change since the issuance of Regulations 77.

tion with reference to Section 131 (f) has continued unchanged since 1932 even though subsequent regulations have been issued. This is sufficient to establish a definiteness of administrative practice upon which a taxpayer may justifiably rely.

 The argument may be put still more strongly. A taxpayer, in computing his tax liability, follows the statutory provisions and the interpretative regulations issued pursuant thereto. When the amounts due are determined, provisions are made for payment. The taxpayer should then be able to plan the normal operations of his business without the risk of being subjected to additional tax demands based upon changes in administrative interpretation. It has been suggested that after the formative stage has passed, and a regulation has become seasoned, the Commissioner should not have the power retroactively to amend the regulation, at least where the taxpayer's interest is adversely affected. Griswold, supra, pp. 413–419.

In the instant case there is involved no problem of an amended regulation, but an additional tax demand based upon a theory at variance with established administrative interpretation. The Government equally should be restrained here from taking an inconsistent position to the taxpayer's detriment. The virtues of certainty and predictability are too little apparent in the field of tax administration. Having followed scrupulously both legislative and administrative directions in filing its return, the plaintiff should be secure in its belief that its tax obligations have been net.

It may be conceded that the primary objective of Congress in making provision for the foreign tax credit was the avoidance of double taxation. It may also be conceded that this objective will be but imperfectly accomplished under the plaintiff's construction of Section 131 (f) since part of the dividend received by the parent will not have been subjected to tax.[4] Such a condition, however, does not justify this Court in sanctioning a retroactive change in the obligations of this taxpayer. It is for Congress to adjust the revenue laws to effectuate more completely its declared purposes.

The plaintiff is entitled to judgment in the amount of $8,150.17 with interest thereon.

---

[4] Since the average foreign tax rate was considerably in excess of the domestic rate, the foreign tax on the taxed portion of the dividend was greater than the comparable United States tax on the entire dividend. In this quantitative sense the avoidance of double taxation objective has been realized, although it remains true that a portion of the dividend has gone untaxed.